[Crim. No. 3285. First Dist., Div. Two. Mar. 26, 1957.]

THE PEOPLE, Respondent, v. JESSE LAWRENCE, Appellant.

Arthur D. Klang for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

STONE, J. pro tem.*—Defendant was indicted on three counts of violation of section 11500 of the Health and Safety Code. Count I charged a sale of heroin on December 14, 1955; Count II charged a sale of heroin on January 19, 1956, and Count III charged possession of heroin on January 19, 1956. It was alleged that defendant had previously suffered three convictions, one for burglary and two for violations of section 11500. Defendant's motion to set aside the indictment was denied. Defendant initially pleaded not guilty to all counts and previous convictions. Before selection of a jury, defendant admitted the prior convictions. Defendant was found guilty on all three counts.

The defendant has alleged seven grounds of appeal. They are (1) the court erred in admitting testimony of an officer concerning a telephone conversation between defendant and an informer which was overheard by means of an amplifier and extension cord; (2) that the arrest without a warrant was illegal; (3) that the search and seizure without a warrant was unlawful and within the exclusionary rule of the Cahan

*Assigned by Chairman of Judicial Council.

case; (4) that the court erred in not submitting the question of the reasonableness of the arrest and the legality of the search and seizure to the jury; (5) the court committed error in not requiring the officers to disclose the name of the informant during the *voir dire* examination; (6) the court erred in not requiring the officers to disclose the name of the informant at the trial before the jury; (7) it was error for the court to refuse to allow a witness produced by defendant, whom he alleged to be the informant, to testify. The numerous grounds of appeal require a rather detailed statement of the facts to provide proper background for a discussion of each question presented.

## The Facts

Inspector George Olsen testified that he was present in the State Building on December 14, 1955, when a known informant placed a telephone call to Evergreen 6-5633. The party at the other end said, "Hello." The informant asked, "Hello, is this you, Jesse?" The other party said, "Yes." The informant said, "Is anything happening?" The other party said, "Yes." The informant said, "Can I get anything?" The other party said, "Yes, come on over." Inspector Olsen identified Jesse Lawrence as the recipient of the call, and recognized him by his voice. The informant was searched, his clothes removed, all pockets searched, and the linings removed from his trousers. Inspector Olsen, Inspector Noel and the informant proceeded to Spruce and Sacramento Streets where the informant was handed $200 in identified State funds. Then the inspector observed the informant walk directly to a green 1951 Packard, in which defendant was sitting behind the wheel. The informant and defendant conversed for approximately two minutes. Then, they went into 451 Spruce Street. Approximately one and one-half hours later defendant, his wife and the informer came out of 451 Spruce Street. Defendant and his wife got in their car. The informer headed north on Spruce. The informer met Inspectors Noel and Olsen at Sacramento and Spruce, and there surrendered to Inspector Noel a rubber container in which there was a white powder later identified as 210 grains of heroin. The inspectors returned the informant to the State Building. They searched him and found none of the money.

Inspector Louis Noel testified that he was present in a public telephone booth at Washington and Broderick Streets on January 19, 1956, when the informant called Evergreen

6-5633. Noel dialed the number. He monitored the conversation through an amplifier which he placed over "the listening end" of the receiver. The informant said, "Hello, is that you, Jesse?" The other party replied, "Yes." The informant asked, "Can I get anything?" The other party said, "Yes, come on by." Officer Noel identified the other party as Jesse Lawrence, the defendant. Then the informant was taken to a State vehicle and searched. No contraband was found. He was given $206 in marked state-identified bills. The informant and several officers proceeded to the vicinity of Sacramento and Spruce Streets. The informant went to 451 Spruce, in a building containing three flats. He went up the stairs to the door at 451 and stood for a moment or two. Defendant raised a window facing on Sacramento Street. The two men apparently conversed for a short while. The informant descended the stairs and defendant dropped what appeared to be a key down to the informant. The informant picked up the key, went up to the doorway at 451 Spruce, opened the door and went in. Over an hour later, the informer came out of 451 Spruce Street. He entered a blue-colored taxicab which proceeded toward California Street. Noel contacted other state officers by radio and informed them of the direction the taxi was proceeding.

Officer Rinken testified that on January 19, 1956, he was in contact with Inspector Noel from the time the informer went into 451 Spruce Street. Sometime later, he was advised to look for the informant in a taxicab. He spotted him in a blue DeSoto cab near Spruce and California Streets. He followed the informer to the intersection of Euclid, where he got out of the taxicab and gave Rinken a rubber contraceptive containing a white powder which was identified as 190 grains of heroin.

Inspector Noel testified that after the informant left the defendant's premises he observed Gerald Williams and defendant's wife, Norvelle Lawrence, leave 451 Spruce Street. Noel radioed Officer Rinken to take Williams into custody. Noel searched Williams and found neither narcotics nor any of the marked bills given to the informer. The officers had Williams return with them to 451 Spruce and ring the door bell. Defendant opened the door. The officers identified themselves and announced that defendant was under arrest for sale of narcotics. Defendant tried to close the door and it was necessary to forcibly take him into custody. Inspector

Noel testified that after subduing defendant, he proceeded up the stairs, where he was met by Inspector Chasten, who showed him a container full of white powder which contained 291 grains of heroin. Noel found a white paper containing one grain of heroin on a cocktail table, and $170 of the money which had been given to the informer in a small cardboard box on a dresser next to defendant's bed. Defendant admitted that it was his money, and said he gambled. Defendant admitted that the container which Inspector Chasten had given to Noel was his, and that he used it for his asthma. Noel observed that the number of the telephone was Evergreen 6-5633.

Objection was sustained to questions by defense counsel seeking to elicit the name of the informant. Defendant then produced Willie Dandridge, an inmate at San Quentin prison, and alleged he was the informant. Dandridge was permitted to testify on voir dire and admitted that he was at defendant's house but was uncertain as to the date. He admitted that defendant threw a key out of the window to him; that he left defendant's premises in a blue DeSoto cab; he denied that he gave money to or purchased narcotics from the defendant. He denied he gave a package of narcotics to Inspector Noel on December 14, 1955, or to Officer Rinken on January 19, 1956. He denied he had informed officer Noel or any other state officer that narcotics could be or had been purchased from defendant. On cross-examination Dandridge denied that he had ever been in the State Building or had agreed to help Inspector Noel. Dandridge did admit that Gerald Williams was at defendant's apartment the day he was there. The defendant asked to call Willie Dandridge as his witness at the trial before the jury but the district attorney objected and the court sustained the objection. The defendant testified on his own behalf and categorically denied any and all sales of narcotics. He denied any telephone conversations with the informant and he testified that the officers threatened him and actually used force on his person unnecessarily at the time of the arrest. Gerald Williams corroborated the defendant's testimony as to most of the events transpiring on January 19, 1956.

*Admissibility of Telephone Conversation.*

██ Defendant charges the court erred in permitting an officer to relate a telephone conversation between the defendant and an informant. The officer listened to the conversation

by means of an amplifier attached to the receiver and an extension cord. Defendant contends ''the listening-in'' by the officer was an invasion of defendant's right of privacy guaranteed by the Constitution of the United States, by article I, section 19 of the California Constitution, and that it was a violation of Penal Code, section 640. The identical question was presented in the case of *People* v. *Malotte,* 46 Cal.2d 59 [292 P.2d 517], in which case the officers placed a recording device under a bed, connected it to an induction coil and recorded a telephone conversation. ■ The court held at page 63:

''Defendant contends, however, that the evidence was obtained in violation of the Federal Communications Act (47 U.S.C.A. § 605), and section 640 of the California Penal Code and that it was, therefore, inadmissible under the rule of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905].

''Section 605 of the Federal Communications Act provides: '. . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person; . . .' A majority of the federal courts define 'intercept' as used in section 605 to mean 'to take or seize by the way, or before arrival at the destined place,' and hold that there is no interception when the intended receiver consents to or directs the overhearing of the communication at the moment it reaches him. [Citations.] The United States Supreme Court, approving this definition in the Goldman case, *supra,* 316 U.S. 129, 134 [62 S.Ct. 993, 86 L.Ed. 1322], went on to say: '[Intercept] does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment it comes into the possession of the intended receiver.' (See *Reitmeister* v. *Reitmeister,* 162 F.2d 691). Thus, as in the present case, where the conversation was recorded by the officers 'at the moment' it reached the 'intended receiver,' there was no interception within the meaning of section 605 of the Federal Communications Act. There was likewise no invasion of privacy in violation of section 640 of the Penal Code. There is no learning of the contents of a communication 'fraudulently, clandestinely, or in any other unauthorized manner' when one of the participants to the conversation consents to or directs its overhearing or preservation. (See, *People* v. *Channel,* 107 Cal.App.2d 192, 200 [236 P.2d 654].)''

██ The instant case clearly comes within the rationale of the Malotte case and the trial court properly permitted the officer to relate the conversation.

*The Arrest and Search and Seizure.*

Defendant contends that the trial court erred in not excluding all evidence seized by the officers in his apartment because the officers had no search warrant. The defendant being well aware of the rule that a search without a warrant may be incidental to a lawful arrest regardless of whether the search is made before or after the arrest (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531]), contends additionally that the arrest was unlawful because the officers had no warrant. Defendant argues that the officers did not have reasonable cause to believe he had committed a felony to justify an arrest without a warrant.

██ Penal Code, section 836, provides that a peace officer may without a warrant arrest a person ''when a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.'' Reasonable cause is shown when under the state of facts of the particular case a man of ordinary care and prudence, knowing what the arresting officer knows, would believe or entertain a strong suspicion that the person is guilty. (*People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73]; *People* v. *Boyles,* 45 Cal.2d 652-655 [290 P.2d 535]; *People* v. *Moore,* 141 Cal.App.2d 87, 89 [296 P.2d 91].) ██ Reasonable cause justifying an arrest may be based upon information obtained from others and it is not limited to evidence that would be admissible at the trial on the issue of guilt. (*People* v. *Boyles, supra*; *People* v. *Trowbridge,* 144 Cal.App.2d 13, 16 [300 P.2d 222]; *People* v. *Moore, supra*; *People* v. *Cannon,* 148 Cal.App.2d 163, 166 [306 P.2d 589].) ██ The record in this case discloses that one of the officers, Inspector Noel, testified that for over a year prior to the arrest, officers had been informed defendant had been using and selling narcotics. Defendant's home was placed under surveillance and for some time known suspects, peddlers and addicts were observed visiting the premises. In March 1955, defendant was arrested and charged with sale, possession and maintaining premises where narcotics were sold. That arrest was based upon surveillance, the purchase of heroin on the premises by an informant as well as the observation of known addicts frequenting the premises. On December 14,

1955, Inspector Noel was present when an informant was searched to be certain he had no narcotics on his person, given marked money, and taken to a rendezvous with defendant. While under surveillance informant and defendant went to defendant's apartment and when the informant left the premises he turned over to the officers a quantity of heroin and the marked money was not on his person. On January 19th, just preceding the arrest in this case, the same informant again purchased a quantity of heroin from the defendant, using the same procedure as that employed on December 14th. Before the informant made the purchase on January 19th, Inspector Noel and Inspector Olsen both listened to a telephone conversation between the informant and the defendant concerning the sale. Inspector Noel watched the informant dial defendant's number, heard the defendant answer, recognized his voice and heard the informant ask, "Is that you, Jesse?" The defendant answered, "Yes." He heard the informant ask, "Can I get anything," and the defendant answered, "Yes, come on over." The officers watched defendant toss a key to informant which was used to enter the premises. Later informant left the premises, turned a quantity of heroin over to an officer, whereupon the officers proceeded to arrest the defendant without a warrant. The officers gained entrance to defendant's premises by a subterfuge, getting a friend of defendant's to ring the door bell and ask admittance. When the defendant opened the door they arrested him without a warrant on the belief he had committed a felony, to wit, violation of section 11500 of the Health and Safety Code. The foregoing résumé was corroborated by all of the officers but it was denied by the defendant, by the person whom defendant alleged to be the informant, by defendant's wife, and by one Gerald Williams, who at the officers' request, induced the defendant to open the door to his apartment, and who had been in the apartment part of the time while the informant was there. The trial court believed the officers and viewing their testimony in the light of the entire transcript, the court was justified in doing so. The evidence in this case is much stronger than that in *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13 [300 P.2d 222], and *People* v. *Gonzales,* 141 Cal.App.2d 604 [297 P.2d 50] as in each of these cases the court upheld an arrest made by an officer without a warrant, relying solely upon the "tip" of an informant. The information the officers had before the arrest

in the instant case provided reasonable cause for the arrest without a warrant pursuant to Penal Code, section 836, subdivision 3. (*People* v. *Boyle, supra*; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6]; *People* v. *Montes,* 146 Cal.App.2d 530, 532-533 [303 P.2d 1064]; *People* v. *Cannon, supra.*)

The arrest was lawful and the search incidental thereto was also lawful, even though made without a search warrant, whether the search preceded or followed the arrest. (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 296 [294 P.2d 36]; *Trowbridge* v. *Superior Court, supra*; *People* v. *Montes, supra.*)

■ Defendant argues even though the arrest was lawful, it was made in the entry hall to defendant's apartment and the officers had no right to search the apartment. This position is untenable. The marked money with which the informant purchased the heroin just prior to the arrest was a natural object of the search. It was a part of the res gestae, and the search of defendant's apartment to find it was incidental to the arrest and entirely reasonable. ■ In any event in making a search incidental to a lawful arrest an officer is not restricted to the area immediately surrounding the location of the defendant at the time he is arrested. The law contemplates a reasonable search of the vicinity. In *United States* v. *Pisano,* 193 F.2d 361-363, the court said:

". . . Searches and seizures incidental to an arrest but without search warrants are not necessarily unreasonable but are, in the absence of unusual circumstances, entirely reasonable. The right to search the place where the arrest is made and to find and seize things connected with the crime as its fruits or as the means by which it is committed stems not only from the authority to search the person but also from the long standing practice of searching for other proofs of guilt within the control of the accused upon arrest. (Citation.) Consequently the premises where a valid arrest is made, under the control of the person arrested, are subject to search without a search warrant. Such a search is not unreasonable. (Citation.) The only essential of validity of a search incidental to an arrest is that it be made in connection with a valid arrest. If the arrest is valid then a search of the immediate premises where the defendant is arrested is reasonable. The decisive question is not whether a search warrant could have been procured but whether the search made was reasonable and that, in turn, in the absence

of exceptional circumstances, depends upon whether the arrest was valid.''

(See also *Carroll* v. *United States,* 267 U.S. 132, 147 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790]; *Agnello* v. *United States,* 269 U.S. 20, 30 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409].) In *People* v. *Montes,* 146 Cal.App.2d 530, 531-532 [303 P.2d 1064], the defendant was arrested while in a station wagon in a driveway outside his home, and the court held a search of defendant's home was reasonable. The search in that case was made incidental to an arrest without a warrant.

The fact the officers gained admittance to the entry hall by subterfuge in order to make the arrest is immaterial. The officers had reasonable cause to believe defendant had committed a felony and the fact that they resorted to trickery to get the door to defendant's apartment open in order to arrest him has no bearing upon the justification for the arrest. (*People* v. *Sayles,* 140 Cal.App.2d 657, 661 [295 P.2d 579]; *People* v. *Maddox,* 46 Cal.2d 301 [294 P.2d 6].)

Nor does the fact defendant resisted both the arrest and the search incidental thereto affect the legality of either.

A defendant may not thwart officers making a lawful arrest without a warrant by resistance. If reasonable or probable cause exists, an officer has the right, indeed the duty in the public interest, to use all force necessary to make a felony arrest. (*People* v. *Maddox, supra.*) It should not be overlooked that an officer also has the right to protect himself and his fellow officers while making a lawful arrest and search.

*Submitting Question of Reasonableness of Arrest and Search and Seizure to the Jury.*

Defendant argues that the evidence concerning the reasonableness or legality of the arrest and seizure should have been presented to the jury on the trial of defendant's guilt. Defendant does not dispute the advisability of the court determining the reasonableness of the arrest and search and seizure outside the presence of the jury in the first instance. His position is that when the court determines that the arrest and the search and seizure were lawful, the court is then determining a question of fact. He contends the question of fact and the evidence from which it was determined should then be presented to the jury for its determination in the trial proper. Defendant bases his argument on the procedure established to determine the admissibility

of a confession. Even though the court determines its admissibility the jury ultimately passes upon the question of whether or not the confession was given voluntarily. This question was decided by the Supreme Court in *People* v. *Gorg,* 45 Cal.2d 776 at page 781 [291 P.2d 469] where the court said:

"Defendant urges, however, that the same procedure should be followed as in the case of a confession, where the trial court initially determines the question of admissibility and then instructs the jury to disregard the confession if they find that it was not freely and voluntarily made. The rule of the confession cases is justified by the fact that the jury must necessarily be informed of the circumstances surrounding the confession properly to evaluate it. The probative value of evidence obtained by a search or seizure, however, does not depend on whether the search or seizure was legal or illegal, and no purpose would be served by having the jury make a second determination of that issue. Moreover, the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt (*People* v. *Boyles, ante,* p. 652 [290 P.2d 535], and cases cited), evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search or seizure."

The Gorg case prescribes the procedure to determine the admissibility of evidence when the question of reasonableness or legality of an arrest or search or seizure becomes an issue. The reasons given for adopting the procedure are unassailable.

*Disclosure of the Name of Informant-Participant.*

During the *voir dire* examination to determine the legality of the arrest and the search and seizure, defense counsel, upon the cross-examination of one of the officers, asked whether or not the same informant made the purchases on December 14th (Count I) and January 19th (Count II) and the officer answered, "Yes." Defense counsel then asked the informant's name and the district attorney objected upon the ground the name of an informant is confidential information. The court sustained the objection. Defense counsel then asked the witness to describe the informant. The district attorney objected upon the same ground. The court sustained the objection. The defendant then produced one Willie Dandridge, an inmate of San Quentin prison and

stated that Dandridge was the informant. Dandridge was placed on the witness stand by defendant and testified he had been with the officers in January; that he had been in the defendant's apartment but that he had never purchased any narcotics from the defendant. He denied making any telephone calls to the defendant and he denied he had ever told the officers he had purchased narcotics from the defendant. The court disbelieved Willie Dandridge and the defendant, and ruled there had been probable cause for the arrest and that the search and seizure made incidental thereto were lawful. The trial then continued in the presence of the jury. Again, the officers testified that an informant had made the purchases on December 14th and January 19th and telephone calls on December 14th and January 19th. They again described the procedure followed in preparing the informant to make the purchases and identified the narcotics delivered to them by the informant on December 14th and January 19th. Upon his cross-examination of the officers during the trial before the jury defense counsel again asked the officers the name of the informant who made the purchases. The district attorney objected upon the ground that it was confidential information and the court sustained the objection. Upon the completion of the People's case defense counsel called the witness Willie Dandridge. The district attorney objected to Dandridge testifying and moved the court for an order requiring defense counsel to make an offer of proof concerning the testimony of Willie Dandridge and to make the offer in the absence of the jury. The court granted the motion and the offer of proof was made in chambers. In substance, the offer of proof was that he would testify that he was the informant referred to by the officers in their testimony; that he did not purchase any narcotics from defendant on December 14th; that he did not make a telephone call to defendant on January 19th; that he was at defendant's apartment on January 19th but did not purchase any narcotics from defendant on that day. Generally, the offer of proof followed the testimony which Willie Dandridge had given at the *voir dire* examination earlier in the trial. He contradicted the testimony of the officers on most material points. After defense counsel made his offer of proof, the district attorney again objected to Willie Dandridge being called as a witness for defendant and the court sustained the objection. Later during the trial a witness who was present in defendant's apartment on January 19th testified

that Willie Dandridge was also present. Defense counsel then renewed his motion to call Willie Dandridge as a witness on defendant's behalf. The district attorney objected and the court sustained the objection.

Counsel for appellant and respondent agree that there is no California decision determining whether or not the name of an informant who participates in the criminal action with which a defendant is charged comes within the purview of Code of Civil Procedure, section 1881, subdivision 5, which provides:

"A public officer cannot be examined as to a communication made to him in official confidence when the public interest would suffer from the disclosure."

The case of *People* v. *Lazzara,* 131 Cal.App.2d 663 [281 P.2d 4], parallels this case in that the informant was a participant in the crime and the court sustained the prosecution's objection to the questions concerning the name, whereabouts, and character of the informant. The question was not decided in that case however, as the court simply held that even had the ruling been error it was not prejudicial under the peculiar circumstances of the case because the defendant knew the identity of the informant; that defendant made no showing that he could not call him as a witness because of lack of such knowledge, or that he intended to call him as a witness, or that he was unable to locate him as a witness. Thus, in the instant case at the *voir dire* hearing there was no prejudicial error, even though the court sustained the prosecution's objections to defense counsel's questions concerning the name and identity of the informant. The defendant not only contended that Willie Dandridge was the informant so that he was not deprived of that knowledge, but he actually called Willie Dandridge as a witness and the court permitted him to testify.

 The trial before the jury on the question of defendant's guilt presents a different situation. The court not only sustained the prosecution's objections to defense counsel's questions concerning the name and identity of the informant, but when the defendant called Willie Dandridge as a witness and made an offer of proof, the court would not permit Willie Dandridge to testify. The offer of proof as well as Dandridge's testimony on *voir dire* was in conflict with the testimony given by the officers on many material points. The trial court erred by sustaining the district attorney's objections and in refusing to permit Dandridge to testify because it denied

the defendant the right to produce witnesses on his behalf and defend himself as guaranteed by article I, section 13 of the California Constitution and by Penal Code, section 686, subdivision 3.

The primary question presented, however, is whether or not an officer may withhold the name of an informer as a confidential communication even though the informant is a participant in the crime charged. The question presents a conflict between two fundamental principles of justice. The name of an informant who cooperates with law enforcement officers has been held to be confidential upon the theory the informant performs a public service. He provides information which law enforcement officers are frequently unable to obtain by any other means. This is particularly true in narcotics cases. His service and his benefit to the public welfare would cease if his identity were disclosed. The courts have held this to be sufficient cause to protect the anonymity of the informant. (*People* v. *Gonzales*, 141 Cal.App.2d 604, 607 [297 P.2d 50].) When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged. On the other hand, when an informant participates in the criminal act he is no longer simply an informer. He is a material witness to the criminal act, in fact, he is similar to a feigned accomplice. In most cases such as the one before us, only the informant and the defendant are present at the time the crime is committed (the sale is made). The officers are secondary witnesses not primary witnesses. Thus, when the informant becomes a participant, another principle of law embodied in article I, section 13, of the California Constitution and Penal Code, section 686, subdivision 3, becomes applicable, namely, that a defendant shall be accorded a full opportunity to defend himself. It becomes more important to the administration of justice and the public welfare that a defendant be accorded this right than that an informant remain anonymous. To deny the defendant the right to examine an officer regarding the name of or to ask other material questions concerning an informant-participant would be to suppress an essential element of the res gestae. The crime is committed when the sale is made and not when the informant delivers the contraband to the officers and tells them about the sale. This view

finds support in several federal decisions and is expressed in *Portomene* v. *United States,* 221 F.2d 582, 583, in the following language:

"When it comes, however, to the point mainly and most vigorously argued, that it was error to deny the defendant's request for the name of the informer to whom it was claimed the defendant had sold the narcotics, we are in no doubt that the appellant has the right of it. In *Sorrentino* v. *United States,* 9th Cir., 163 F.2d 627, the court pointed out the distinction between the case where the person called an informer is that and nothing more, in which case the defendant would not have been entitled to have his identity disclosed, and a case such as this one, where the informer is the person to whom the defendant is said to have sold and dispensed the opium described in indictment. In such a case, information as to this person's identity was material to the defense, and the denial of the requested information was error." (See also *Sorrentino* v. *United States,* 163 F.2d 627, 629; *United States* v. *Conforti,* 200 F.2d 365, and *Parsons* v. *State,* 251 Ala. 467 [38 So.2d 209].) When the defendant is not permitted to ask questions about a material element of the crime such as those concerning the feigned accomplice, he is being denied a substantial right which amounts to a denial of due process of the law.

If the prosecution is not required to divulge the name of the buyer when a defendant is charged with a sale of narcotics on the ground it is confidential information, the way is left open for the "phantom" purchaser. The possibility is remote but the fact that the possibility exists at all when it can be eliminated violates the American concept of justice in a criminal trial.

We believe the same principle applies to a hearing on *voir dire* held out of the presence of the jury. Although the question of the guilt of the defendant is not before the court, nevertheless, the defendant has the same right to present his defense at the hearing to determine the reasonableness of an arrest or search as he does on the question of his guilt. The fact that the hearing is held before the court in the absence of the jury makes it no less a criminal proceeding. Due process applies and all the rights the defendant may have at the trial proper apply with equal force and dignity to the proceedings before the court sitting in the absence of a jury.

When an informant becomes a participant in the crime charged against the defendant, he and the people lose the right to keep his identity anonymous.

*Error Affecting Count Three.*

Respondent contends that if there was error in the court's refusal to permit defense counsel to ask the officers the name of the informant-participant on cross-examination and to call Willie Dandridge to the witness stand to testify on defendant's behalf, such error goes only to counts 1 and 2, but not count 3. It is true counts 1 and 2 are based upon sales to the informant while count 3 is one of possession of narcotics, a crime in which the informant did not participate. Nevertheless, all three counts were tried together, the officers who testified regarding counts 1 and 2 were also the principal witnesses concerning count 3. Willie Dandridge on *voir dire* contradicted the testimony of the officers on most material points. The jury did not hear him testify but had he been permitted to testify and had the jury or any juror believed him, it would have impeached the testimony of the officers. What effect that impeachment would have had it is impossible to say, but if believed, it would have affected the credibility of the officers as to their testimony concerning count 3. Thus, when the court erred in refusing to permit Willie Dandridge to testify on defendant's behalf, it cannot be said the error was not prejudicial as to count 3.

Judgment is reversed as to all three counts.

Kaufman, P. J., and Dooling, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 22, 1957. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.