[Crim. No. 6088.   Second Dist., Div. Three.   Mar. 31, 1958.]

THE PEOPLE, Respondent, v. JESUS NIETO CARRASCO, Appellant.

Harold J. Ackerman for Appellant.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

SHINN, P. J.—Jesus Nieto Carrasco and Lorenzo Barrios were accused by information of the unlawful possession of marijuana, in violation of Health and Safety Code, section 11500. In a court trial, Barrios was found not guilty and Carrasco was found guilty as charged in the information. Defendant made a motion for new trial, which was denied. Probation was likewise denied, and Carrasco was sentenced to state prison. He appeals from the judgment and the order denying him a new trial. The sole contention is that the evidence was insufficient to prove the offense of possession.

Florentino Limon, a Los Angeles police officer assigned to the "gang" detail of the Homicide Division, was the only witness for the People. The following is the substance of his testimony. On the afternoon of June 5, 1957, Officer Limon and a fellow officer went to defendant's home at 2819 Alcazar Street in Los Angeles. The officers knocked on the door and defendant answered. Officer Limon said "We are looking for Wero" (a Mexican nickname corresponding to "Whitey") and defendant said "I am Whitey." Limon asked "Can we talk to you?" and defendant said "Yes, come on in." Upon entering the house, the officers identified themselves and told defendant that he was under arrest for selling narcotics to juveniles. When asked by the officers if he had any narcotics in the house, defendant said "No." Upon being asked "Would you mind if we look?" defendant said "No, go ahead."

The officers went into the kitchen where they found a white canister and some large brown paper bags. One of the bags was open; inside it were a number of Prince Albert tobacco cans. The officers examined the cans and found that some were empty while others contained a green leafy substance that resembled marijuana. There was also a small amount of the same substance on the bottom of the canister. When asked if he knew what was in the containers, defendant said "No." Officer Limon said that he thought the substance was a narcotic and asked defendant if he had any more around the house. Defendant again denied having any narcotics and said "Go ahead, you won't find anything."

The officers then went into the living room where they found Carrasco's codefendant Barrios together with another man

named Rios. The officers searched the room and discovered the remains of a marijuana cigarette in an ashtray stand and some brown paper wrapping from another marijuana cigarette in the arm of a couch.

Upon being questioned by the officers, Barrios said that he was staying with Carrasco and had only been in Los Angeles for a week. He disclaimed any knowledge of the marijuana and denied being a user of narcotics. In response to the officers' questions, Carrasco said that he had lived in the house for several years and that he did not use narcotics. He told the officers that an old man who dealt in tobacco had left the containers the previous night and had promised to return for them. Officer Limon asked: "Whitey, if somebody leaves something at your house, don't you try to find out what it is?" and defendant replied: "He told me they were tobacco and I didn't think he was lying."

Defendant, testifying in his own behalf, denied that the containers were his. He stated that an old man named Blackie brought them to the house to be kept overnight. He met Blackie several months previously either in a bar or on the street. He did not know Blackie's address or whether Blackie had a place of business. He knew nothing about the cigarette which the officers found in the arm of the couch. He had some visitors the night before the arrest and did not know how the other cigarette came to be in the ashtray; he did not see anyone smoke the cigarette.

In a prosecution for unlawful possession of narcotics, the People must prove that the forbidden substance was under the dominion and control of the accused, that the accused was aware of its presence, and that he knew the substance was a narcotic. (*People* v. *Rodriguez*, 151 Cal.App.2d 598, 601 [312 P.2d 272].)

There was sufficient evidence to prove defendant guilty of possessing marijuana. Carrasco admitted to the officers that the containers and their contents were under his control, having been left in his care by a man called Blackie. It was a reasonable inference that the cigarettes whose remains were found in the ashtray and the arm of the living room couch were prepared from the supply of marijuana in the containers. Although defendant denied knowing of the cigarettes, it is not contended that he was absent from the house at any time subsequent to the delivery of the containers, and it was a proper inference that Carrasco smoked the cigarettes or that

he permitted someone else to do so. In either case, defendant would have known that they contained marijuana. The fact that Rios and Barrios were also in the house when defendant was arrested would not necessarily tend to exculpate him, for there was no evidence that they were addicts or had previously been convicted of a narcotics offense.

The present case is unlike *People* v. *Antista*, 129 Cal.App. 2d 47 [276 P.2d 177], which is relied upon by defendant. Antista was convicted of possessing marijuana. There was evidence that he shared an apartment with a Miss Rivers, who was a convicted narcotics addict; Antista allowed his friends to visit the apartment in his absence to watch television; they would enter the apartment with a key he left under a mat outside the door; Antista was away from the premises and did not return until after the arresting officers found marijuana secreted in the apartment; Miss Rivers and another man were in the apartment at the time of the search. We held in that case that the evidence was insufficient to establish that Antista was in possession of marijuana or that he knew the substance was in his apartment. In the instant case, Carrasco admitted possession of the cans and canister, and the evidence and the reasonable inferences justified a conclusion that he knew them to contain contraband.

The judgment and order appealed from are affirmed.

Wood (Parker), J., and Vallée, J., concurred.