[Crim. No. 6675.   Second Dist., Div. One.   Dec. 23, 1959.]

THE PEOPLE, Respondent, v. FULTON MILLER et al., Defendants; CARL McCRIMMON, Appellant.

William A. Drake, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Weber, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment and sentence in a case involving a violation of the provisions of section 11500, Health and Safety Code (possession of narcotics).

In an information filed in Los Angeles County the appellant, Carl McCrimmon, and one Fulton Miller were charged in four counts with violations of section 11500, Health and Safety Code, a felony, in that on or about the 27th day of July, 1958, they had in their possession a narcotic, to wit: dolophine (Count II); morphine (Count III); dilaudid (Count IV) and cocaine (Count V). The information further alleged that the appellant, Carl McCrimmon previously had been convicted of the crimes of robbery and petty theft with a prior conviction of petty theft; that he had served terms of imprisonment therefor in the state prison.

The appellant entered a plea of "Not Guilty" and denied the prior convictions as alleged. A jury trial was waived and the cause was submitted on the transcript of the preliminary hearing. Additional testimony was produced by all parties at the trial. Appellant was found "Guilty" on each of the four counts, and probation was denied, he obviously being ineligible therefor. Appellant was then sentenced to the state prison.

A résumé of the facts is as follows:

The pharmacist-owner of a drug store testified that he closed his store at 10 p. m. on the evening of July 26, 1958, and that when he returned at 9 a. m. the following morning (July 27) he found his drug store in a "mess." There "was a big hole in the wall, plaster all over," the cabinet where narcotics were kept was wide open and most of the narcotics were missing. The safe had been tampered with, the combination knocked off, and hammered. There were tools on the floor and also a *flashlight*. The name "Farrington, Narcotics Detail" and "Unit RJ" were scratched on the flashlight.

The flashlight was identified by William R. Farrington, a deputy sheriff assigned to the Narcotics Division, as being the flashlight which he (Farrington) had lent to Miller (appellant's codefendant) on the night of the burglary.

Deputy Farrington had known Miller as a neighbor for some 18 years. He lived across the street. At 10:40 p. m. on July 26, Farrington said that Miller had come to his home "and asked me (Farrington) if he could borrow a flashlight, stating that he wished to fix a tail light on the rear of an automobile."

At approximately 10 a. m. on the morning of July 27, Sergeant Meyers, a deputy sheriff who had investigated the burglary, contacted Deputy Farrington. At 11 a. m. Sergeant Meyers returned the flashlight which had been found at the scene of the burglary to Deputy Farrington at his home.

Some 40 minutes later, at approximately 11:40 a. m. Deputy Farrington and Sergeant Meyers observed a 1949 yellow Pontiac pull into a parking lot directly across from Deputy Farrington's home. While appellant remained seated in the driver's seat of the automobile, codefendant Miller alighted from the vehicle and entered his home. He did not carry anything with him. A short time thereafter, Miller came out of his house, at which time Deputy Farrington, joined by several other officers, placed both men under arrest. Miller was outside the car and appellant was seated within the car.

The officers did not have any information concerning this particular car or any car, nor did they have a warrant for the arrest of either defendant, nor did they have a search warrant. There had been nothing unusual about the way the car had been driven.

The time sequence of the events immediately following Miller's exit from his house are not entirely clear. Apparently, however, after both men were placed under arrest, a search of appellant's person revealed a bottle of "Dolophine Hydrochloride" in his left hand rear pocket. A search was then made of the vehicle which appellant had driven to that location and on the front seat some of the other narcotics stolen from the store were found inside a pillow case, over which a sweater was wrapped.

A conversation was held at the scene of the arrest between Deputy Farrington and Miller. Farrington testified, "As I recall, I asked the defendant Miller what he had done with my flashlight. He stated that he had dropped it and broken it, and that he would buy me a new one, in fact, he would go right then and purchase a new flashlight for me."

Deputy Farrington further testified as to a second conversation with appellant held in the Hall of Justice, wherein appellant admitted that he and Miller had used some of the cocaine taken from the store early on the morning of the 27th prior to their arrest. The pharmacist identified the narcotics taken from appellant's person and automobile as having come from his establishment.

Defense counsel moved to suppress the evidence, and objected to its introduction on the grounds that there was no

probable cause for the arrest of either of the defendants and that, therefore, the exhibits were obtained through illegal arrest, and illegal search and seizure. The motion was denied.

The appellant now contends: That there was an illegal search and seizure and therefore the trial court erred as a matter of law in receiving into evidence against the appellant the evidence illegally obtained. Also, that no evidence was offered to show that appellant had knowledge of the narcotic nature of the object taken from him, therefore the trial court erred as a matter of law in finding appellant guilty of possession of narcotics.

Section 836 of the Penal Code provides:

"A peace officer may make an arrest in obedience to a warrant, or may without a warrant, arrest a person;

"1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence.

"2. When a person arrested has committed a felony, although not in his presence.

"3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

Reasonable cause is shown when under the state of facts of the particular case a man of ordinary care and prudence, knowing what the arresting officer knows, would believe or entertain a strong suspicion that the person is guilty. (*People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St. Rep. 73] ; *People* v. *Boyles,* 45 Cal.2d 652-655 [290 P.2d 535] ; *People* v. *Moore,* 141 Cal.App.2d 87, 89 [296 P.2d 91] ; *People* v. *Lawrence,* 149 Cal.App.2d 435, 443 [308 P.2d 821].)

What constitutes reasonable grounds is always a question of fact. (*People* v. *White,* 159 Cal.App.2d 586, 590 [324 P.2d 296, 298] ; *People* v. *Scott,* 170 Cal.App.2d 446, 452 [339 P.2d 162].)

It is our opinion that it was reasonable and proper under the circumstances for the officer to arrest appellant. A felony (burglary) actually had been committed sometime between 10 p. m. on the evening of July 26, 1958 (when the owner of the burglarized drug store closed up), and 7:30 or 8 a. m., on the morning of July 27 (when the crime was discovered).

There was nothing to show the number of persons involved in the burglary. A quantity of narcotics was taken from the store. Among the objects found at the scene of the burglary

was a flashlight which belonged to Deputy Farrington, a deputy sheriff assigned to the Narcotics Division. Deputy Farrington had lent this particular flashlight to defendant Miller at 10 :40 p. m. on the evening of the burglary.

The officers, seeing what they saw, among other things could reasonably have concluded that Miller and appellant had burglarized the drug store and were at Miller's house to divide the loot secured in the burglary. Furthermore, appellant was the driver of the car, transporting Miller who obviously was connected with the burglary. From a general perspective of the entire situation, the officers also could have concluded that Miller and the appellant might drive away in a very short time.

While the mere fact that one is in the company of a person reasonably known or believed to have committed a felony, standing alone, is not enough to justify the police making a search of his person (*People* v. *Green,* 152 Cal.App. 2d 886 [313 P.2d 955]), there were other circumstances in addition to proximity which made this arrest lawful.

The law is well settled that a prisoner lawfully arrested may be lawfully searched. (*People* v. *MacCagnan,* 129 Cal.App.2d 100 [276 P.2d 679].) The automobile was clearly connected with the situs of the arrest and was within the proper scope of the search. In *People* v. *Lawrence,* 149 Cal.App.2d 435, 445 [308 P.2d 821], the court in quoting from *United States* v. *Pisano,* 193 F.2d 361-363 stated:

". . . Searches and seizures incidental to an arrest but without search warrants are not necessarily unreasonable but are, in the absence of unusual circumstances, entirely reasonable. The right to search the place where the arrest is made and to find and seize things connected with the crime as its fruits or as the means by which it is committed stems not only from the authority to search the person but also from the long standing practice of searching for other proofs of guilt within the control of the accused upon arrest. (Citation.) . . . If the arrest is valid then a search of the immediate premises where the defendant is arrested is reasonable. . . ."

Referring to appellant's second point to the effect that the evidence was insufficient to support the finding that he had knowledge of the narcotic nature of the object taken from him, it is established that in order to sustain a conviction of possession under section 11500, there must appear in the record sufficient evidence to show defendant knowingly had physical or constructive possession (*People* v. *Gory,* 28 Cal.2d

450 [170 P.2d 433] ; *People* v. *Martinez,* 117 Cal.App.2d 701 [256 P.2d 1028] ; *People* v. *Batwin,* 120 Cal.App.2d 825 [262 P.2d 88]) of a narcotic, knowing it to be such. (*People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40] ; *People* v. *Carrasco,* 159 Cal.App.2d 63 [323 P.2d 129] ; *People* v. *White,* 50 Cal.2d 428 [325 P.2d 985] ; *People* v. *Lopez,* 169 Cal.App.2d 344 [337 P.2d 570].) The court in *People* v. *Winston, supra,* discussing the required knowledge on the part of the defendant to sustain a conviction stated at page 161 that:

"... it should be made clear that we have been discussing solely a question of substantive law . . . we have not been discussing the question of the nature of the evidence required to sustain a conviction of unlawful possession of a narcotic ; and it should not be implied that the required knowledge on the part of the defendant may not be inferred from surrounding circumstances."

It is settled that the elements required for a conviction may be established by circumstantial evidence from which reasonable inferences may be drawn by the trier of fact. (*People* v. *Lopez,* 169 Cal.App.2d 344 [337 P.2d 570] ; *People* v. *Magdaleno,* 158 Cal.App.2d 48 [322 P.2d 89] ; *People* v. *Robarge,* 151 Cal.App.2d 660 [312 P.2d 70] ; *People* v. *Batwin, supra,* 120 Cal.App.2d 825 [262 P.2d 88] ; *People* v. *Gentry,* 118 Cal.App.2d 501 [257 P.2d 1012].)

There is sufficient evidence in the record from which a reasonable inference may be drawn that the dolophine found in appellant's left rear pocket and the other narcotics found on the front seat of the car in which he was seated were under his dominion and control, and that he knew of their presence and that they were of a narcotic nature. Deputy Farrington testified as to a conversation that he had with appellant after the arrest: "McCrimmon stated that he and Miller had gone to the area of Imperial and Wilmington Avenues that evening, that he had left—he went into a game and gambled in a game. Miller had left him. He wasn't in the company of Miller for some four—I should say four hours. The next time he saw Miller was early in the morning, and at that time Miller walked around a gas station and Miller had the bag which contained these narcotics, the seized narcotics, in his possession at that time. *Together they went to the Springfield Motel and used a quantity of this cocaine.*" (Emphasis added.) Appellant had dolophine in his pocket and was seated next to a quantity of other narcotics, and he admitted removing the bottle from the sack and placing it in his pocket. While appellant

denied knowledge that the sack or the bottle in his pocket contained narcotics and gave an explanation for the presence of the bottles of dolophine in his pocket, stating that he didn't even know what dolophine was nor how to spell it, his story only served to create a factual conflict. It was incumbent upon the trial judge to weigh the evidence and determine the credibility of the witness. We are concerned only with whether there is sufficient proof in the record, contradicted or uncontradicted, reasonably to justify the finding that defendant committed the offense. (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778].) Considering the evidence in the light most favorable to the prosecution, as we must on appeal, it is clear that there was ample support for the factual determination by the trial judge that the defendant-appellant had the requisite knowledge.

The purported appeal from the sentence is dismissed. The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied January 19, 1960, and appellant's petition for a hearing by the Supreme Court was denied February 17, 1960.