[Crim. No. 10.    Fifth Dist.    Apr. 12, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE WILLIAMS, Defendant and Appellant.

Roslyn Robbins Dienstein, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Nat A. Agliano, Deputy Attorney General, for Plaintiff and Respondent.

BROWN, J.—This is an appeal by defendant Williams who, with a codefendant, one Baiza, was accused by indictment filed March 14, 1961, in Tulare County, of a violation of section 11531 of the Health and Safety Code, a felony, in that on or about March 4, 1961, defendant did wilfully, unlawfully

and feloniously sell, furnish and give away a narcotic, to wit, marijuana, to Tony Martinez, a State Narcotics Agent. The defendant pleaded "Not guilty" and, together with codefendant Baiza, came on for trial before a jury on May 11, 1961. Both defendants were found guilty; defendant Williams was denied probation and was sentenced to state prison.

Martinez and one Mannen, another State Narcotics Agent, were investigating narcotics traffic in the Visalia area. On March 4, 1961, Martinez was in the Hacienda Café in Visalia watching a telecast of a prize fight. Defendant was standing near Martinez and when the fight ended, Martinez testified that defendant said to him, "Robinson needed some of this," and at the same time simulated the smoking of a marijuana cigarette by placing his hands to his mouth in a covering position. Martinez then asked defendant if there were any "happenings" which is supposed to mean, "Is there any marijuana around?" and defendant replied, "Yes, there's some happenings. . . . I don't see any of the connections around here right now." Defendant asked Martinez to take him to the Hamburger King where he "wanted to change clothes and also see a couple of Negro females who might have some stuff. . . ." On the way to the Hamburger King the parties stopped at a place called Memorial Hall in Visalia where defendant said to Martinez that "he knew a young stud that usually brought pot [marijuana] to the dance." Defendant went inside but returned in a short time, saying that there was nothing doing. They continued on their way to the Hamburger King and as they were nearing the place Martinez got sick, vomited and said, "I got to have some stuff." Defendant said that he always took "H" (presumably meaning heroin), and Martinez asked defendant if there was any around and defendant answered that that was the reason they were going to the Hamburger King because two women there had knowledge of heroin.

Martinez further testified that at the Hamburger King the defendant changed into a rust-colored suit, telling Martinez that he was now dressed for action because the tan-colored suit meant that he was "hip" and was supposed to make it easier to make connections. He also stated that a tan or rust-colored car would serve the same purpose. The two men then drove back to the Hacienda Café, got out of the car and started walking towards the café. As they drew near the window of the café defendant held Martinez back, saying, "Cool it. I see a stud inside that deals. Just cool it. I'll bring

him out.'' Defendant then entered the café and immediately returned with the codefendant Baiza, defendant telling Baiza that Martinez was a good ''stud.'' The parties were introduced and Martinez asked Baiza if he had some ''joints,'' meaning marijuana cigarettes. Baiza said, ''I've got it on me and I can deal it but I don't know if I trust the colored stud with you.'' Martinez told Baiza that defendant was all right and was a friend of his. Baiza then motioned the parties to follow him around the corner of the café and then told Martinez that he could sell only one ''joint'' at that time; that he had three but was ''saving the other two for a friend of his.'' He then handed one to Martinez who gave Baiza a dollar bill and Baiza went back into the Hacienda Café. Defendant then said, according to Martinez' testimony, ''Come on, man, let's torch up.'' But Martinez said there wasn't enough for both of them and that he was going to go in and get the other two cigarettes from Baiza. He went into the Hacienda Café again and persuaded Baiza to sell him the other two cigarettes. Martinez then left, telling Baiza he would return, and turned the three cigarettes over to Agent Mannen. Immediately thereafter, Martinez rejoined defendant at the Hacienda Café and asked him about the possibility of obtaining more marijuana. Defendant said that there was always some ''happenings'' at a place called Allen's Corner, and they could go over there and ''we can score easy. I know quite a few studs there.'' Martinez said he couldn't go and they parted company.

The analysis of the three cigarettes disclosed that they contained marijuana.

Defendant's views of the facts are quite different than the above. Defendant testified in court that he didn't know the codefendant Baiza and had never seen him before the trial of this action. He admitted meeting a ''guy'' but didn't think he was in court where both parties were being tried, and said, ''I don't never remember seeing him until this morning.'' The defendant denied being with Martinez when he purchased some cigarettes from somebody, claiming that he was in the Hacienda. He admitted drinking some beer with Martinez and admitted that Martinez took him to where his clothes were so that he could change to go to a dance. In some parts of his testimony he denied knowing what marijuana was or what the word ''weed'' meant, but later admitted that he did know that ''weed'' meant marijuana. He denied that he told Martinez that he might be able to make a contact to obtain heroin, but admitted that he did tell Martinez that he would help

him find some weed; denied that he knew anybody at the Hacienda Café that had weed; stated that he would have had to be lying if he had told Martinez that he knew somebody who had some; later testified, "I'll tell you about the weed situation. I think if you take me down there and tell me to hunt some weed I wouldn't go to colored town, I would go over there where those Spanish people is to look for weed. That's where it was." To the question of whether there were Spanish people in the Hacienda Café he stated, "That's who were there. . . . That would be the onliest place" to look for some weed. He denied knowing what "torch up" means and didn't remember having any conversation with any Mexican man outside the Hacienda about marijuana or "joints."

Agent Mannen testified that he was following Agent Martinez and Williams on that evening and that he saw Williams, Agent Martinez and a Mexican male identified later as Baiza, standing on the sidewalk in front of the Hacienda Café.

Defendant Baiza testified in his own behalf and denied knowing defendant Williams; denied ever seeing him before the trial; and could not even recall if Williams was the man with Martinez when the cigarettes were sold. Martinez testified that at the time of the sale Baiza came out of the Hacienda Café and refused to do business with Martinez until he knew who this "stud" was, referring to Williams.

Defendant alleges that the People must prove that the defendant had physical or constructive control of the narcotic; that he was aware of the presence of the narcotic; and that he knew the substance was a narcotic.

We feel that the accused had constructive knowledge of the narcotic. In the case of *People* v. *Henderson,* 121 Cal. App.2d 816 [264 P.2d 225], a similar contention was made on the basis that the appealing defendant did not know a package held by his codefendant contained heroin and the defendant himself never had the heroin in his possession. The court there held the proposition to be devoid of merit. The defendant's admission that he took his friend to a certain intersection for the purpose of obtaining heroin and that he did not know whether or not they would split the heroin capsule was considered to be sufficient evidence to sustain an implied finding of knowledge. The admission clearly showed that defendant was an aider and abetter and hence, under the provisions of section 31 of the Penal Code, he was properly found guilty as a principal. At page 818, the court said:

"*People* v. *Sinclair,* 129 Cal.App. 320 [19 P.2d 23], relied on by defendant, does not support his thesis, for the court said at page 322, '. . . [Defendant] argues that it is necessary to show that the person accused has the unlawful article on his person, but he has called our attention to no case so holding; and manifestly such is not the law, because if it were it would exclude entirely from the operation of the statute cases of joint possession or possession by carrying the illegal article in an automobile or other conveyance or keeping it in some place under the immediate and exclusive control of the accused.' "

We feel that the evidence shows that the defendant knew of the presence of the narcotic; that he went inside and got Baiza; that he was present when the narcotic was transferred and that he knew it was a narcotic because he said he wanted to "torch up" and he used the word "weed" in his testimony, and Agent Martinez testified that defendant used that word to him in referring to marijuana.

Defendant also claims that the People had the burden to prove that Baiza had possession of marijuana, which is correct (*People* v. *Carrasco,* 159 Cal.App.2d 63, 65 [323 P.2d 129]), and that defendant knew that Baiza could furnish marijuana.

In *People* v. *Foster,* 115 Cal.App.2d 866, 868 [253 P.2d 50], the court said: "Mere presence at the scene of the crime standing alone is not sufficient to justify a finding of guilt. [Citation.] The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. [Citation.]

"To show such knowing possession the conduct of the parties, admissions or contradictory statements and explanations are frequently sufficient."

We can't expect that defendant must stop and make a chemical analysis of the substance before it can be proved that the cigarettes which Baiza did sell to Martinez contained marijuana.

While it is true that guilty knowledge is not presumed—it has to be established (*People* v. *Antista,* 129 Cal.App.2d 47, 50 [276 P.2d 177]), we think that the People did carry the burden of proving the facts from which it could be fairly inferred that defendant knew the narcotic nature of the materials furnished. "However, it is well settled that these essential facts need not be established by direct evidence but may be proved by circumstantial evidence, and the reasonable

inferences that that [*sic*] may be drawn from the facts so proven.'' (*People* v. *Estrada,* 185 Cal.App.2d 435, 437 [8 Cal. Rptr. 308].)

The court said, in *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433], at page 455: '' 'Such defense [lack of knowledge of the presence of the morphine] merely created a conflict with the *prima facie* case made out by the People showing that such morphine was in defendant's possession. Neither intent nor knowledge is an element of this offense. The mere possession is a violation of the act [citing authority]. The only perfect defense is a valid prescription under the act. Any other defense is for the consideration of the judge or jury, as the case may be; . . .' '' (*People* v. *Randolph,* 133 Cal.App. 192, 196 [23 P.2d 777].)

We think that the facts established by the direct evidence in this case, as well as the circumstantial evidence, could reasonably infer to the jury that defendant knew the narcotic nature of the materials and knew that Baiza had possession and could furnish the narcotic to the agent.

In *People* v. *Brister,* 192 Cal.App.2d 234, 236-237 [13 Cal. Rptr. 375], it was stated: ''As stated in *People* v. *Taylor,* 52 Cal.2d 91, 94 [338 P.2d 337] : 'It is not necessary that the buyer deal directly with the seller. The fact that the parties deal with each other through a third party is sufficient to sustain a conviction.' . . .

''Defendant also points out that the verdict is based upon the uncorroborated testimony of Officer Tusan. He then takes the view that such evidence is not sufficient to sustain the verdict. He is mistaken, however, in his position. The uncorroborated testimony of the officer, if believed, as it was in view of the verdict, was sufficient. [Citation.]

''. . . It was, of course, for the jury to determine who was telling the truth. An appellate court may not reevaluate either the credibility of the witnesses or the weight that should be given to their testimony. [Citation.] The jury's decision on this factual issue is obviously controlling.''

The court said, in *People* v. *Vice,* 192 Cal.App.2d 98 [13 Cal.Rptr. 366], at page 99: ''A police officer testified that he purchased the marijuana, which was introduced in evidence, from appellant. That evidence was sufficient to support the verdict notwithstanding appellant's testimony in conflict therewith. There were no errors of law and the jury was fully and correctly instructed.''

The self-serving statements by the defendant, as well as by Baiza, were only natural. The denial that defendant knew Baiza and Baiza's statement that he did not know the defendant were to be expected and the jury had the opportunity to weigh the evidence and resolve the conflicts between them and the prosecution's witnesses and make their decision accordingly. The appellant also states that the mere presence of the defendant in the place where it would be possible to buy marijuana or to meet a peddler of marijuana does not justify the conviction or arrest of the defendant. This has been covered in the case of *People* v. *Green,* 152 Cal.App.2d 886, 889 [313 P.2d 955], where the court said: ''The mere fact that one is in company of a person reasonably known or believed to have committed a felony, standing alone, is not enough to justify the police in making a search of his person. [Citation.] The facts in this case go beyond mere association.''

█ Defendant also claims that the People did not prove that defendant knew the narcotic nature of the materials furnished and that the use of slang terms concerning narcotics and its availability among Mexican people does not show that defendant knew the narcotic nature of the materials furnished.

In *People* v. *Lopez,* 169 Cal.App.2d 344 [337 P.2d 570], at pages 349 and 350, the court said: ''It is, of course, true that to sustain a conviction of possession under section 11500, there must appear in the record sufficient evidence to show defendant knowingly had physical or constructive possession [citations] of a narcotic, knowing it to be such [citations]. However, these elements may be established by circumstantial evidence from which reasonable inferences may be drawn by the trier of fact [citations]. . . . Since we are concerned only with whether there is sufficient proof in the record, contradicted or uncontradicted, to reasonably justify the finding defendant committed the offense [citation] ; and considering the evidence in a light most favorable to the prosecution, we conclude that it was reasonable for the trial court to infer therefrom that *defendant knowingly had in his possession* heroin, marijuana and amidone with knowledge of their narcotic nature.''

In *People* v. *Jackson,* 164 Cal.App.2d 772 [331 P.2d 218], the court said, at page 778: ''The instant case can be distinguished from the *Spencer* case [*People* v. *Spencer,* 140 Cal.App.2d 97 (294 P.2d 997)] in that not only was the pur-

ported stipulation not a direct admission of knowledge of marijuana, but also there was a specific denial by appellant of such knowledge. Although the actual issue being tried was whether or not the alleged crimes were committed by appellant, this specific denial made knowledge of marijuana an issue, and it was incumbent on the state to show appellant's knowledge.''

While it is true that the evidence of other offenses of a similar nature is admissible to show defendant's knowledge of the narcotic nature (*People v. Gonzales*, 186 Cal.App.2d 79 [8 Cal.Rptr. 704]), and that the defendant in our case did not have any prior record of this character, and that he does not have the burden of establishing the lack of knowledge, we feel that the People did supply sufficient testimony to show that the defendant knew the narcotic nature of these materials, such as, his words and gestures when he looked around in the café and said that there were no ''connections'' present; went to other places where he suggested to the agent that narcotics might be found; that he put on distinctive clothing which he said would help make a ''connection''; that when the agent got sick and said ''I have got to have some stuff'' defendant said, ''I always take H''; that he went to see two women at the Hamburger King because they had knowledge of heroin; that when the agent bought the first cigarette the defendant said, ''Let's torch up.''

The trial court appropriately instructed the jury of the law of aiding and abetting.

The evidence is sufficient to support the implied finding of the jury that defendant aided and abetted in the sale made by Baiza to Martinez.

''All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed.'' (Pen. Code, § 31; *People v. Esparza*, 182 Cal.App.2d 656, 658 [6 Cal.Rptr. 568]; *People v. Bigelow*, 104 Cal.App.2d 380, 389 [231 P.2d 881].)

As to the claim of defendant that the evidence fails to show that Baiza had possession of, or could furnish, narcotics, we think our discussion above is adequate to show the defendant's knowledge and that there was sufficient evidence for the jury to find that Baiza had such possession and could furnish the narcotics. The reasonable inference drawn from all of this

evidence is that defendant had the requisite guilty knowledge. (*People* v. *Henderson, supra,* 121 Cal.App.2d 816.)

### Limiting Instructions

The defendant complains that the court erred by failing to give a limiting instruction relative to the prejudicial admissions of the codefendant Baiza.

In the trial, Agent Mannen, in direct testimony, related certain admissions made by Baiza. This was also elicited by defendant's attorney (who was also attorney for the codefendant Baiza) in the cross-examination. The testimony involved was the admission by Baiza that he had sold Martinez a marijuana cigarette. The defendant did not request a limiting instruction but now contends that it was prejudicial error that the court failed to give such instruction.

CALJIC No. 39 states: "Where evidence has been received against one of the defendants but is not received as against the other, the jury may consider such evidence only as against the defendant against whom it was permitted to be received. It may not be considered by the jury for any other purpose, or against any other defendant."

It is well settled that when evidence is admissible at a trial for one purpose, but inadmissible for another, the right to a limiting instruction is waived if not requested at the trial. (*People* v. *White,* 50 Cal.2d 428, 430 [325 P.2d 985].)

On this subject, in *People* v. *Lichtenstein,* 22 Cal. App. 592 [135 P. 692], the court stated at page 609: "It has been repeatedly held that where testimony is properly received for a specific or limited purpose and it is important that its consideration in reaching a conclusion upon the facts should be restricted to that purpose, it is the duty of counsel representing the side against which such testimony may be supposed to militate to ask for an instruction limiting the effect thereof to the particular purpose for which it was admitted."

Inasmuch as the defendant did not ask for a limiting instruction, it is clear that the contention is not well taken and is devoid of merit. (*People* v. *Bird,* 195 Cal.App.2d 606, 609 [16 Cal.Rptr. 3].)

### Misconduct of the District Attorney

In his opening statement, the prosecutor stated that the defendant had "admitted to Agent Mannen at that time that he was the man who had introduced Mr. Martinez to Baiza and had helped him in procuring the cigarettes."

Defendant states that this would lead the jury to interpret the statement by the prosecuting attorney as evidence, although not presented as evidence.

Neither in direct nor in cross-examination of Agent Mannen did his testimony bring out any admissions by defendant Williams to Mannen that he had introduced Martinez to Baiza; neither did it show that the defendant had helped Martinez to procure the cigarettes; and there was no direct evidence introduced to show such admissions by the defendant to Agent Mannen.

Prior to the opening statement of the district attorney the court stated: "Now what the lawyers say in these statements is not evidence. The only purpose of it is to assist you in better understanding the evidence as it comes in witness by witness or piece by piece." The district attorney, in his statement, said: ". . . what I say at this time is not to be considered by you as evidence, it's what the prosecution feels the evidence will show during the course of this trial. The evidence itself will come from the sworn testimony of the witnesses who will testify, . . ."

■ Failure of the prosecuting attorney to introduce evidence in substantiation of his opening statement, whether on account of rules of evidence, or otherwise, does not necessarily indicate prejudice. (*People* v. *Granados,* 49 Cal.2d 490, 495 [319 P.2d 346]; *People* v. *Andrus,* 159 Cal.App.2d 673, 680 [324 P.2d 617].)

Here, there is no evidence of any bad faith or intention not to support the statement by evidence, and in the absence of such showing, it cannot be said that the district attorney was guilty of misconduct because he failed to produce such evidence. (*People* v. *Ramsey,* 172 Cal.App.2d 266, 273 [342 P.2d 287].) In *Ramsey,* the court at page 273, said: "The opening statement of the expected proof and its subsequent collapse cannot *per se* show an unfair intent; if it did, any bare failure of proof promised in an opening statement could be converted into grounds for reversal."

■ In the present case, the defendant made no objection to the statement of the district attorney and if he knew such statement could not be proven, should have objected at the time instead of relying on the possibility of a later reversal. "On appeal the rule applicable to objections as to the form of a question is equally applicable to the composition of the opening statement." (*People* v. *Ramsey, supra.*) See also

*People* v. *Granados, supra*; and *People* v. *Chester,* 142 Cal. App.2d 567, 574 [298 P.2d 695].

In *People* v. *Carr,* 163 Cal.App.2d 568 [329 P.2d 746], the court held that the deputy district attorney's opening statement was reversible error in that he said *all* the victim's stolen property had been found in the defendant's car, but only two items were found in the car; and there, the court found the deputy district attorney had acted in bad faith.

In our case, the jury could readily recognize that the statement of the district attorney had not been substantiated and that there was direct evidence in the record in Martinez' testimony as to how defendant Baiza and Martinez met.

The defendant did not urge the defense of entrapment, but denied that he knew Baiza at the time of the sale of the cigarettes or at any other time, and further denied that he knew anything about the sale or that he knew anything about narcotics. Entrapment is a positive defense which must be raised at the trial. (*People* v. *Valdez,* 188 Cal.App.2d 750, 759 [10 Cal.Rptr. 664].) However, it was not raised at the trial.

The jury's determination of the factual issues being supported by substantial evidence, that determination is binding on this court.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.