[Crim. No. 17199. Fourth Dist., Div. Three. Aug. 9, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RAFAEL OCEGUEDA BARAJAS, Defendant and Appellant.

---

**COUNSEL**

Giles, Stewart, Barnett & Harmon and Robert P. App for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Jay M. Bloom, Louis R. Hanoian, A. Wells Petersen and Rudolf Corona, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**SONENSHINE, J.**—Defendant Rafael Barajas (Barajas) was convicted of murder (Pen. Code, § 187)[1] and robbery (§ 211). The jury found he personally used a knife in the commission of both offenses (§ 12022, subd. (b)). The sole issue raised on appeal is whether it is error to have permitted the prosecution to place before the jury information which the defense repeatedly warned could not, and which in fact was not, produced. We conclude the prosecution committed prejudicial misconduct which the court should have prevented, and reverse.

## I

A brief summary of the facts will suffice. Two males entered a gas station for the purposes of robbery. While one male approached a cashier and demanded money, a second confronted another employee with a knife. A scuffle ensued resulting in the employee's death. At trial, the cashier identified Barajas as the killer and testified to selecting his photograph from a lineup prior to trial. Although she was "sure" of her in-court identification, she admitted to having been both unable to identify the assailant immediately following the robbery and to being equivocal in her identification at the preliminary hearing. No other witnesses identified Barajas, nor was there any evidence corroborating the cashier's identification.

---

[1]All statutory references are to the Penal Code unless otherwise stated.

## II

The defense sought, at a motion *in limine,* to restrict the prosecution's opening statement. Barajas informed the court the prosecutor would tell the jury of an informant, Alonzo Armendariz, who would testify to being present in the gas station during the robbery and would identify Barajas as one of the assailants. Barajas asserted, in an offer of proof, a defense investigator had interviewed Armendariz and the witness would recant statements made to the police. The prosecutor admitted he had never interviewed Armendariz, nor had his investigator, but asserted he had the right to refer to the proposed testimony in opening statement. Although the defense offered to play a tape of the interview with Armendariz where he recanted statements made to the police, the court refused to listen to the tape or limit the prosecution's opening statement.[2]

In its case-in-chief, the prosecution called Alonzo Armendariz. Prior to his appearance before the jury, the court appointed counsel and signed an order immunizing the witness from prosecution (§ 1324). Through counsel, Armendariz informed the court he would not testify. The defense sought a hearing out of the presence of the jury to determine if the witness would in fact refuse to testify. (Evid. Code, § 402.) The motion was summarily denied.[3]

---

[2]In his opening statement the prosecutor told the jury: "The reason why I'm putting him on is I anticipate calling another witness and I want to prep you at this point in time that this witness was in the role of an informant, and he's an uncooperative witness. He at one time made a statement which I'm going, as the prosecutor, intend to put the man on to see if that statement is the statement he will repeat in court. I am, however, unsure because of the uncooperative nature of this particular witness, whether he's going to repeat the statement he made to the police which assisted them in this case.

"That statement would prove normally—and would provide, if he repeats that statements, [*sic*] additional evidence to support the charges in this case and support the idea that the defendant is responsible.

"I wish to, of course, indicate in his uncooperative nature he has made contrary statements since then, even though he at one time made a statement to the police which—he has made other statements, but I anticipate calling him, and the testimony will fit with the idea what Louis Calderon will tell you, that there were other people in that gas station, and the statement by this person initially indicates he was one of those people in the gas station and saw what happened."

[3]"MR. EVANS: I understand, but of course my approach differs depending on what this guy says.

"THE COURT: I'm not telling you how to run a lawsuit. I can only respond.

"MR. EVANS: I understand exactly what you're saying, however, if he starts giving me little nitches—

"THE COURT: I understand.

"MR. PETERS: As I indicated before, whatever I'd like before Mr. Evans has a chance to call him to make a motion this be done outside the presence of the jury.

"THE COURT: That request is denied.

"MR. PETERS: I've indicated to the court especially under 350 the only admissible evidence is irrelevant [*sic*] evidence that the court and the prosecutor knows this man is not

In the presence of the jury the prosecutor asked Armendariz a series of questions. To each question, the witness refused to answer.[4] The court declared a recess, and in chambers sustained defense counsel's objection to further questioning. However, the prosecution sought to ask one additional question; whether the witness' refusal to testify was a result of threats. Defense counsel objected and sought an offer of proof. The court granted the prosecution's request, notwithstanding the lack of a factual basis for the question.[5] Again, before the jury, the prosecutor questioned Armendariz and received the same response.[6] The jury was then excused and the court held the witness in contempt.

### III

Barajas repeatedly sought the court's protection from what was foreseen as the prejudicial impact of the prosecution's tactics. The defense objected

---

going to say anything, then you have the power to exclude such evidence. If everybody knows he's not going to say anything and we put him on the stand based on what Mr. Evans has said in his opening statement, although there's no evidence, it's impossible for Mr. Barajas not to be prejudiced, that now they have something to corroborate what I'll characterize as uncertain identification of Miss Yvonne Thompson.

"THE COURT: The court reacts in two ways. First this court does not share your certainty as to what a witness will do and if you have that kind of precognition, you have a gift I know that no one else has, and all of us have been surprised by witnesses who have taken the stand at one time or another. I don't have that certitude as to what this witness will do, so for that reason that specific part of the request is denied.

"Secondly, essentially the request that the jury is automatically prejudiced essentially says we have a jury that is not willing to follow the law and I am not prepared to make that determination certainly."

[4]"Q. BY MR. EVANS: Sir, did you at sometime speak with police officers from the City of Anaheim about something you had seen on June 15, 1980?

"A. I do not wish to answer those questions.

"Q. Did you on June 15, 1980, answer questions asked of you by the police officers concerning an incident that had taken place at a Gas Co gas station approximately 5:30 p.m. on that date?

"A. I do not wish to answer those questions."

[5]The question itself was objectionable in that it called for a response covering *any threats* as opposed to threats from the defendant. Threats to a witness not in some manner connected to the defendant are irrelevant. (*People* v. *Benjamin* (1975) 52 Cal.App.3d 63 [124 Cal.Rptr. 799].)

[6]"Q. BY MR. EVANS: Sir, are you refusing to answer the questions propounded to you because of some fears of threat to your own safekeeping?

"A. I do not wish to answer those questions.

"MR. EVANS: Your Honor, I would at this point ask the court to instruct the witness to respond to the questions propounded to him, so I may repeat the questions and continue.

"THE COURT: Mr. Alonzo, this Court does direct you to answer the questions that have been asked of you by the People's representatives.

"Q. BY MR. EVANS: Following that admonition, if I address those same questions to you, sir, that I've just now asked you, what would your response be?

"A. Same answer.

"Q. That is that you would not answer any questions?

"A. I do not wish to answer those questions."

to references to Armendariz's testimony in the prosecutor's opening statement, requested a hearing out of the jury's presence to determine if Armendariz would testify, and objected to questions regarding threats to the witness. In each instance the court refused to intervene.

■ Unquestionably, the prosecution may in its opening statement refer to evidence which it believes will be produced. (*People* v. *Ramsey* (1959) 172 Cal.App.2d 266 [342 P.2d 287].) While the test for determining prejudice arising from a variance between the opening statement and the proof is no longer bad faith,[7] three tests determine if a defendant has been prejudiced. First, was an objection lodged or a motion *in limine* made? (*People* v. *Williams* (1962) 202 Cal.App.2d 387, 397 [20 Cal.Rptr. 740]; *People* v. *Solis* (1961) 193 Cal.App.2d 68 [13 Cal.Rptr. 813]; *People* v. *Ramsey, supra,* 172 Cal.App.2d 266; *People* v. *Planagan* (1944) 65 Cal.App.2d 371 [150 P.2d 927].) Second, was the jury informed by the court or by the prosecution opening statement is not evidence? (*People* v. *Rhinehart* (1973) 9 Cal.3d 139 [107 Cal.Rptr. 34, 507 P.2d 642], disapproved on other grounds in *People* v. *Bolton, supra,* 23 Cal.3d 208; *People* v. *Carpenter* (1979) 99 Cal.App.3d 527 [160 Cal.Rptr. 386].) Third, did opening statement result in a violation of the defendant's Sixth Amendment right to confrontation? (*People* v. *Bolton, supra.*)

■ The prosecutor in the instant matter told the jury he expected an *informant* would testify to statements made to police which helped solve the crime, and would provide additional evidence demonstrating Barajas was responsible for the murder. He also told the jury the witness was uncooperative and might refuse to ratify his previous statements.[8] This summary led to but one conclusion in the jurors' minds; the informant would, if he was cooperative, tie Barajas to the crime. Given the paucity of corroboration to the cashier's identification, such evidence was an important, if not crucial part, of the prosecution's case. Armendariz's refusal to testify obviously resulted in a complete failure in that proof.

We must now analyze the facts in light of the three delineated tests to determine if Barajas was prejudiced. First, Barajas sought to prevent the prosecutor from alluding to the disputed information in a motion *in limine*. Although the defense made an offer of proof buttressed by a taped interview with the recalcitrant witness, the court refused to limit opening statement. Second, the jury was never informed by the prosecutor his opening state-

---

[7]*People* v. *Bolton* (1979) 23 Cal.3d 208 [152 Cal.Rptr. 141, 589 P.2d 396].

[8]The prosecutor's opening statement alluded more to the admission of hearsay than to the direct testimony of the witness.

ment was not evidence, and the court's only relevant instruction informed the jury (CALJIC No. 1.02.)[9] statements of attorneys are not evidence.

Third, the prosecutor's opening statement, when coupled with the questioning of Armendariz, resulted in a violation of Barajas' Sixth Amendment right to confrontation. (*People* v. *Bolton, supra,* 23 Cal.3d 208, 214-215.) Armendariz was questioned in the jury's presence notwithstanding a request for a pretestimonial hearing to determine if Armendariz would refuse to testify. The court denied the motion, reasoning jurors are obligated to follow the court's admonitions, and nothing to the contrary had been shown.[10]

Although the court must, prior to excusing a recalcitrant witness, cause the witness to be sworn and questioned, nothing prevents the court from holding a pretestimonial hearing. (*People* v. *Harris* (1979) 93 Cal.App.3d 103 [155 Cal.Rptr. 472]; *People* v. *Johnson* (1974) 39 Cal.App.3d 749 [114 Cal.Rptr. 545].) The necessity of such a hearing under these circumstances is obvious. ■ A prosecutor may compel a witness to assert a privilege to specific questions, but "he may not, under the guise of cross-examination, get before the jury what is tantamount to devastating direct testimony." (*People* v. *Shipe* (1975) 49 Cal.App.3d 343, 349 [122 Cal.Rptr. 701].) ■ Having told the jury in opening statement an uncooperative informant would help convict Barajas, the jury observed the prosecutor direct leading questions at Armendariz which left little doubt he was both the informant and he saw the murder. When the witness refused to answer questions, just as the prosecutor had told the jury he might, the jury was further informed the witness was recalcitrant due to threats to his life. The message could not have been clearer, and yet was delivered without benefit of *any* admissible evidence.

*Bolton* holds where prosecutorial misconduct invades a constitutionally protected right, the error must be evaluated in light of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. The combination of opening statement error and the improper use of leading questions permitted the prosecution to avoid Barajas' Sixth Amendment right to confrontation by permitting the prosecutor to testify without benefit of cross-examination. (*People* v. *Bolton, supra,* 23 Cal.3d 208, 214-

---

[9]The court instructed the jurors in the context of disregarding sustained objections that, "statements made by the lawyers during the course of this trial are not evidence."

[10]In a similar context involving the questioning of a codefendant who refused to testify (*People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]) it has been stated, "The matrix of *Aranda* is that jurors are unable to comply with an admonition to disregard information revealed through inadmissible evidence even when such admonition comes from the judge and is directed at specific evidence at the moment it comes in." (*People* v. *Laursen* (1968) 264 Cal.App.2d 932, 938 [71 Cal.Rptr. 71].)

215, fn. 4.) Barajas' conviction rests solely upon the equivocal eyewitness testimony of one witness and the improper inferences drawn from the questioning of Armendariz. We find the state has not proven beyond a reasonable doubt the error did not contribute to the verdict. (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 711-712]; *People* v. *Bolton, supra,* 23 Cal.3d 208, 214-215, fn. 4.)

The judgment is reversed.

Crosby, Acting P. J., and Wallin, J., concurred.

A petition for a rehearing was denied August 22, 1983, and respondent's petition for a hearing by the Supreme Court was denied October 5, 1983.