Filed 8/19/24  P. v. Cerda CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>RYAN CERDA,<br><br>  Defendant and Appellant. | F086977<br><br>(Super. Ct. Nos. 22CR-02209, 21CR-02360)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  Steven K. Slocum, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Hill, P. J., Poochigian, J. and Meehan, J.

**INTRODUCTION**

A jury convicted Ryan Cerda of assault with a deadly weapon, sale or transportation for sale of a controlled substance, possession for sale of a controlled substance, and other crimes. The trial court sentenced him to a term of 14 years plus 25 years to life in prison. In this appeal, defendant argues that the trial court violated his right to due process and a fair trial under both the United States and California Constitutions by denying his motion for mistrial when the prosecution failed to present evidence of a prior traffic stop that the prosecutor had discussed during his opening statement. We disagree and affirm the judgment.

**PROCEDURAL BACKGROUND**

The District Attorney of Merced County refiled an information pursuant to Penal Code[1] section 1387.2 on January 31, 2023 (Super. Ct. Merced County, No. 22CR-02209), charging defendant with assault with a deadly weapon (§ 245, subd. (a)(1); count 1) and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 2). The information also alleged defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)), had one prior serious felony conviction (§ 667, subd. (a)), and had one prior "strike" conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (a), (b)–(i), 1170.12, subds. (a)–(d)). Defendant pleaded not guilty to all counts and denied the allegations.

The District Attorney of Merced County filed a second information on January 11, 2023 (Super. Ct. Merced County, No. 21CR-02360), charging defendant with sale or transportation for sale of a controlled substance (Health & Saf. Code, § 11379, subd. (a); count 1) and possession for sale of a controlled substance (Health & Saf. Code, § 11378; count 2). The information also alleged defendant possessed more than 28.5 grams of methamphetamine (§ 1203.073, subd. (b)(2)) and had three prior "strike" convictions

---

[1]      Undesignated statutory references are to the Penal Code.

within the meaning of the Three Strikes law (§§ 667, subds. (a), (b)–(i), 1170.12, subds. (a)–(d)). Defendant pleaded not guilty to all counts and denied the allegations.

A jury convicted defendant of all counts in case No. 22CR-02209 on May 23, 2023, and found true that defendant personally inflicted great bodily injury. After defendant waived his right to a jury trial, the trial court found true that defendant had been convicted of three prior serious or violent felonies. The trial court denied defendant's motion for a new trial,[2] which argued insufficient evidence supported the verdicts.

A jury convicted defendant of all charges in case No. 21CR-02360 on August 29, 2023.[3] After defendant waived his right to a jury trial, the trial court again found true that defendant had been convicted of three prior serious or violent felonies.

The trial court denied defendant's motion to dismiss his prior serious and violent felony convictions.[4] As to case No. 22CR-02209, the court sentenced defendant to a term of 25 years to life in prison, plus a three-year consecutive term (§ 12022.7, subd. (a)) and a five-year term (§ 667, subd. (a)), as to count 1 and a consecutive four-year term as to count 2, for a total term of 12 years plus 25 years to life in prison.[5] As to case No. 21CR-02360, the court sentenced defendant to a consecutive term of two years (one-third the middle term of one year doubled by the strike conviction) as to count 1 and a stayed term

---

[2] Although defendant's motion was titled "Motion for Judgment Notwithstanding the Verdict" (some capitalization omitted), the trial court treated it as a motion for new trial.

[3] At the People's request, the trial court struck the weight enhancement (§ 1203.073, subd. (b)(2)) as to counts 1 and 2.

[4] Defendant filed a written motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and invited the court to dismiss the strike convictions for all purposes, arguing that they should be stricken pursuant to section 1385, subdivision (c) because they were 16-year-old convictions.

[5] The court further denied defendant's invitation to dismiss either the section 667, subdivision (a) enhancement or the section 12022.7, subdivision (a) enhancement after finding that dismissal would likely result in physical injury and serious danger to society (§ 1385, subd. (c)).

of four years as to count 2. The aggregate term for both cases was 14 years plus 25 years to life in prison. Additionally, the court ordered defendant to pay victim restitution and various other assessments and fines.

Defendant timely appealed on October 9, 2023.

**FACTS**

## I. *Evidence at the assault trial.*

Jesse M. testified that on November 16, 2021, he was riding his bicycle through the parking lot near a restaurant and, after exchanging words, an assailant stabbed him twice in his left forearm and once in the webbing between his left thumb and index finger. Jesse described the assailant to police and identified defendant as the assailant from a photographic line up with 60 percent certainty. At trial, Jesse testified to a different description of the assailant and that the photograph in the lineup did not resemble his assailant. Jesse was unable to identify defendant in court as his assailant and testified, "I believe with all my heart that it wasn't him." Jesse had expressed concern to officers that he did not want to be a rat and later testified that he wanted the case to be done and did not want to have to watch his back.

On November 16, 2021, Thongshounh Sengmany and his girlfriend, Shannon Ward, drove with defendant to pick up pizzas for dinner before the assault, but Sengmany left after fighting with Ward. Defendant texted Sengmany, requesting that he bring gas for the vehicle and to "hurry up" because some "guys" were after defendant. When Sengmany arrived at defendant's vehicle approximately 45 minutes later, police were "swarming" around it and defendant was not there. When Sengmany called defendant at an officer's request, defendant did not answer. Defendant's phone records placed defendant's phone in the area of the attack.

In the vehicle that Jesse identified as being the assailant's, officers found defendant's birth certificate, two frozen pizzas, and several knives, although no blood was seen on the knives. Defendant was later arrested in possession of a large knife and

4.

ammunition. When questioned about Sengmany's statements to officers, defendant denied knowing him.

## II.  *Evidence at the drug trial.*

On June 9, 2021, deputies employed by the Merced County Sheriff's Office conducted a traffic stop of a vehicle in which defendant was driving. During a search of the vehicle, one officer seized two bindles of a substance consistent with methamphetamine hidden in the center console beneath a cover. The bindles weighed approximately 60 grams total. A chemist tested one of the bindles and concluded that it contained 28.440 grams of methamphetamine (or approximately one ounce). One gram is the equivalent of 10 doses of methamphetamine. An average user of methamphetamine uses one-tenth or two-tenths of a gram per day. Therefore, the one bindle of methamphetamine that contains 28.440 grams of methamphetamine contains approximately 280 dosage units of methamphetamine, a quantity inconsistent with personal use. Additionally, the officers did not find any paraphernalia commonly used to ingest methamphetamine.

Officers also seized defendant's cellular phone and wallet. While being held by an officer, the phone received a call from a phone contact identified as "Jojo" who asked for defendant. Defendant yelled, "It's the cops, homie." Additionally, law enforcement searched defendant's cellular phone and obtained several messages exchanged by defendant with other individuals using various social media applications. One message chain appeared to be a discussion concerning whether the communications application was secure, most likely referring to whether law enforcement could access it. Other messages involved purchases of black tar heroin, quarter-pound quantities of controlled substances (quantities inconsistent with personal use), and methamphetamine.

One-quarter pound of methamphetamine, divided into four separate one-ounce bindles, is approximately 1,120 dosage units of methamphetamine and consistent with sales. Two such bindles contain a total of 560 dosage units and supply an individual user

of methamphetamine for approximately one year.  Therefore, this quantity of methamphetamine is consistent with sale and not personal use.

After seizing a motel entry card, officers also searched defendant's motel room.  They located documentation relating to the vehicle and personal items of defendant.  Officers did not find any paraphernalia to indicate that defendant was using methamphetamine.  The most common way to ingest methamphetamine is to smoke it using a glass pipe, although it can be snorted or injected.  However, officers did find 16 small plastic bags in the room consistent with those used to package methamphetamine.

## DISCUSSION

**I.**   ***The trial court did not abuse its discretion in denying defendant's motion for mistrial based upon the prosecution's discussion of evidence in its opening statement that was not ultimately presented during trial.***

### A.   Background

Defendant moved to exclude any evidence of prior bad acts pursuant to Evidence Code section 1101.  On May 10, 2021, defendant was found in possession of one ounce of methamphetamine during a traffic stop and denied that he personally used methamphetamine.  Defendant claimed that he had the methamphetamine "just because."  The prosecutor moved to admit the evidence pursuant to Evidence Code section 1101, subdivision (b) because defendant was driving the same car when methamphetamine was found again on June 9, 2021, and defendant denied personally using methamphetamine.  The trial court granted the prosecutor's motion to admit evidence of defendant's prior bad act.

Prior to opening statements, the trial court instructed the jury as to certain principles of law, including that an opening statement is intended only to provide an overview of expected evidence, and admonished that "[n]othing that the attorneys say is evidence.  In their opening statements and closing arguments, the attorneys will discuss

the case, but their remarks are not evidence." During the prosecutor's approximately five-minute opening statement, he advised the jury that it would hear evidence that on May 10, 2021, defendant was stopped by law enforcement driving the same vehicle as on June 9, 2021, and an officer found one ounce of methamphetamine under the driver seat. When questioned, defendant told the officer that he did not use methamphetamine and possessed it "[j]ust because." The prosecutor stated that because of that prior stop, defendant hid the methamphetamine in a less accessible location on June 9, 2021.

Defense counsel, in a three-minute opening statement, reminded the jury that the attorneys' statements are not evidence, nothing said by the prosecutor is evidence, the prosecutor's statements are just his expectation of the evidence to be presented, and to "make sure that [the prosecutor is] able to prove everything that he's discussed in his opening statement." After evidence as to the charged offenses concluded that day, the trial court continued the trial for five days.

When trial reconvened, the witness to the May 10, 2021 vehicle stop failed to appear for court, and the trial court denied the prosecutor's motion to continue the trial. Defendant moved for a mistrial, arguing that the prosecutor referred to the prior vehicle stop in his opening statement and the jury would be unable to set aside that information despite any instruction to do so by the court.

The trial court denied the motion for mistrial and advised the jury that no further evidence would be presented. The court instructed the jury prior to closing arguments as follows: "What the attorneys say is not evidence. Okay? The evidence is what you see in photographs, the exhibits, and what you hear from the witness stand. [¶] We put the case over from last week because the People had a witness that they expected to testify who has not testified. So, remember, it's only the witness's testimony that [is] the evidence. [¶] What the attorneys said in their opening statements is not evidence. Okay? You have to focus in on what you heard from the witness stand and what you see in the exhibits that were admitted into evidence. Okay? All right." The trial court then read the

jury instructions, including CALCRIM No. 200, "Duties of Judge and Jury," which provided that the jury must decide the facts of the case based only upon the evidence presented at trial. The court also instructed the jury that the evidence is the sworn testimony of witnesses, the exhibits, and "anything else I tell you to consider as evidence" pursuant to CALCRIM No. 222. CALCRIM No. 222 also included the admonition that "[n]othing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys [will] discuss the case, but their remarks are not evidence.… Only the witnesses' answers are evidence."

Defense counsel argued to the jury that the evidence was not sufficient to establish that defendant possessed or transported the methamphetamine for sale.

**B.      Applicable Law and Standard of Review**

" 'A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.]' [Citation.] A motion for a mistrial should be granted when ' " 'a [defendant's] chances of receiving a fair trial have been irreparably damaged.' " ' " (*People v. Collins* (2010) 49 Cal.4th 175, 198, third bracketed insertion added.) The defendant bears the burden to show the trial court abused its discretion in denying his motion for a mistrial. (*People v. Maury* (2003) 30 Cal.4th 342, 434–437.) We review a trial court's ruling on a motion for a mistrial under the deferential abuse of discretion standard. (*People v. Schultz* (2020) 10 Cal.5th 623, 673.)

"It is improper for a prosecutor to make assertions of fact in an opening statement that the prosecutor cannot prove and does not intend to prove, and overstatement is a frequent ground of attack on appeal. But mere failure to prove every point asserted does not amount to prejudicial misconduct. Witnesses may unexpectedly fail to appear, evidence may not meet expectations, developments in the trial may call for a change in

8.

plan, or evidence offered may be excluded. Mere discrepancy between statement and proof is not reversible error. Indeed, the opinions point out that the trier of fact will usually respond unfavorably to the overstatement, and that defense counsel may capitalize on it in argument." (5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012), Criminal Trial, § 621, p. 963.)

"The purpose of the opening statement 'is to prepare the minds of the jury to follow the evidence and to more readily discern its materiality, force and effect ….'" (*People v. Green* (1956) 47 Cal.2d 209, 215, overruled on another ground in *People v. Morse* (1964) 60 Cal.2d 631, 648–649; see *People v. Wash* (1993) 6 Cal.4th 215, 257.) "[R]emarks made in an opening statement cannot be charged as misconduct unless the evidence referred to by the prosecutor was so patently inadmissible as to charge the prosecutor with knowledge that it could never be admitted." (*People v. Davenport* (1995) 11 Cal.4th 1171, 1212–1213, overruled on another ground in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.) A defendant need not prove a prosecutor acted in bad faith, and it is often more appropriate to characterize the prosecutor's conduct as error rather than misconduct. (*People v. Bolton* (1979) 23 Cal.3d 208, 213–214.)

### C. Analysis

Defendant argues that the trial court abused its discretion in denying his motion for mistrial when the prosecutor discussed defendant's uncharged May 10, 2021 prior bad act in his opening statement but was unable to call a witness to testify to that event. Defendant, without development of his argument, also claims that the error "implicates [his] federal constitutional rights to due process and a fair trial."

Comments of the prosecutor in an opening statement are not grounds for reversal of the judgment on appeal unless the comments were so prejudicial or as to deny the defendant a fair trial. (*People v. Wrest* (1992) 3 Cal.4th 1088, 1109; *People v. Harris* (1989) 47 Cal.3d 1047, 1080, disapproved on another ground by *People v. Wheeler* (1992) 4 Cal.4th 284, 299 & fn. 10.) In *Wrest*, the jury was informed that the

prosecutor's opening statement was not evidence and the inconsistency between the opening statement and the evidence was inconsequential. (*Wrest*, at p. 1109.) Wrest had been permitted to confront all witnesses and to challenge and rebut all evidence offered against him and, therefore, suffered no conceivable prejudice. (*Id.* at pp. 1109–1110, citing *People v. Barajas* (1983) 145 Cal.App.3d 804, 809.) When there is a variance between the prosecution opening statement and the proof, one of the tests for prejudice is "was the jury informed by the court or by the prosecution opening statement is not evidence?" (*Barajas*, at p. 809.) Such an instruction has been found to ameliorate potential prejudice from a prosecutor's misstatement of evidence in an opening statement. (See *ibid.*; *People v. Sanchez* (1995) 12 Cal.4th 1, 70, overruled on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *Wrest*, at p. 1109.) In our case, the jury was repeatedly so instructed by the court.

Defendant does not argue that the prosecutor committed misconduct but that, nonetheless, the information the prosecutor discussed in his opening statement that was not introduced as evidence was so highly prejudicial that no admonition of the trial judge to disregard it could erase it from the minds of the jurors. While defendant did not cite *Frazier v. Cupp* (1969) 394 U.S. 731 (*Frazier*), we find that case to be instructive here. In *Frazier*, the prosecutor's opening statement anticipated that a former codefendant would testify against Frazier. At trial, however, the codefendant refused to testify. The jury was instructed that the opening statement was not evidence. (*Id*. at pp. 733–735.) The United States Supreme Court concluded, "[I]n these circumstances the limiting instructions given were sufficient to protect petitioner's constitutional rights."[6] (*Frazier*, at p. 735.) The Supreme Court emphasized that the alleged prejudicial evidence was discussed in an opening statement, the jury was told that the opening statement should

_____

[6]    In *Frazier*, Frazier claimed that the unproven statements in the prosecutor's opening statement combined with the witness's invocation of his right not to incriminate himself violated Frazier's right to confrontation. (*Frazier, supra*, 394 U.S. at p.734.).

not be considered as evidence, and the witness's statement was not a vitally important part of the prosecution's case. (*Ibid*.)

The Supreme Court explained, "It may be that some remarks included in an opening or closing statement could be so prejudicial that a finding of error, or even constitutional error, would be unavoidable. But here we have no more than an objective summary of evidence which the prosecutor reasonably expected to produce. Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given.… [I]t does not seem at all remarkable to assume that the jury will ordinarily be able to limit its consideration to the evidence introduced during the trial. At least where the anticipated, and unproduced, evidence is not touted to the jury as a crucial part of the prosecution's case, 'it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately.' " (*Frazier, supra*, 394 U.S. at p. 736.)

The prosecutor in defendant's case similarly provided an objective summary of evidence after the trial court instructed the jury that the attorneys' statements are not evidence. While defendant's possession of methamphetamine that he denied personally using (and was in the same vehicle as the day of the offense) would have been powerful evidence, the jury heard it in the context of an opening statement that lasted approximately five minutes and which the jury had been instructed was merely anticipated evidence. Defense counsel's three-minute opening statement stressed that the prosecutor's statements are not evidence and repeatedly urged the jury to make sure that the prosecutor proved everything discussed in his opening statement. After evidence as to the charged offenses concluded that day, the trial court continued the trial for five days.

When the trial reconvened, the prosecutor was unable to produce the witness for the prior bad act evidence, and the court advised the jury that no further evidence would be presented. Before proceeding to closing arguments, the court reminded the jury that it could only consider witness testimony and exhibits and that attorneys' statements are not evidence. The court explained that it had continued the trial for a specific prosecution witness who ultimately did not testify and only witness testimony is evidence, and the court repeated the admonishment that the attorneys' opening statements are not evidence.[7] When reading the jury instructions, the court read CALCRIM No. 222 that repeated the admonition that the attorneys' opening statements are not evidence and described the evidence that could be considered in determining whether the prosecutor had proven the charges. Neither attorney discussed the prior bad act incident in closing arguments.

We do not believe that the prosecutor's comments in opening statement were so prejudicial as to make the trial fundamentally unfair and deny defendant the right to a fair trial. (See *People v. Wrest, supra*, 3 Cal.4th at pp. 1109–1110.) In these circumstances the limiting instructions given were sufficient to protect defendant's constitutional rights, and defendant was not prejudiced by the prosecutor's incorporation of the prior bad act incident into his opening statement five days before the jury began deliberations. Furthermore, "[i]t is not unreasonable to assume, in view of … the express instruction by the court, that the jury limited its consideration to the evidence introduced during the trial." (*People v. Hernandez* (1970) 11 Cal.App.3d 481, 491; see *People v. Martinez* (2010) 47 Cal.4th 911, 957 ["We presume the jury followed the court's instruction."].) In sum, the trial court did not abuse its considerable discretion in denying defendant's

---

[7]    The trial court did not specifically link the lack of witness testimony to the prior bad act discussion in the prosecutor's opening statement at the request of defense counsel "not to specifically allude to that—to that incident."

motion for mistrial and concluding that its admonitions alleviated any potential prejudice to defendant.

However, we also find that failure to declare a mistrial, even if error, was harmless. "Under traditional application of this state's harmless error rule, the test of prejudice is whether it is 'reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the comment attacked by the defendant.' " (*People v. Bolton, supra*, 23 Cal.3d at p. 214; see *People v. Watson* (1956) 46 Cal.2d 818, 836.) If constitutional error is involved, then the burden shifts to the state "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Chapman v. California* (1967) 386 U.S. 18, 24.) Whatever test of prejudice this court applies to the present case, we are certain that any reasonable jury would have reached the same verdict even in the absence of the prosecutor's opening statement remarks.

As the People note, the evidence was compelling in this case: defendant was found transporting approximately two ounces of methamphetamine, which is inconsistent with personal use; officers did not find any evidence of drug use paraphernalia in either defendant's vehicle or motel room; defendant had 16 small plastic bags in his room consistent with those used to package methamphetamine; and defendant engaged in several social media conversations relating to his purchases of distributable quantities of methamphetamine. No evidence supported defendant's trial defense that he possessed the methamphetamine for personal use.

In light of the strong evidence against defendant produced at the trial and the pointed and repeated instructions that opening statements are not evidence, we find beyond a reasonable doubt that the error complained of did not contribute to the verdict.

## DISPOSITION

The judgment is affirmed.