Filed 2/18/25  P. v. Doyel CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA RYAN DOYEL,<br><br>    Defendant and Appellant. | C100243<br><br>(Super. Ct. No. 22FE020290) |

Following the denial of his request for pretrial diversion pursuant to Penal Code section 1001.36, defendant Joshua Ryan Doyel pled no contest to felony evading of a peace officer in willful or wanton disregard for the safety of persons and property.[1]  He now appeals contending the trial court erred in denying his diversion application because the court applied the wrong standard to determine his eligibility and suitability, and

---

[1]  Undesignated statutory references are to the Penal Code.

1

substantial evidence does not support these determinations. He also argues against the court's exercise of its "residual discretion." Because we find defendant has failed to show the trial court abused its discretion in determining he was ineligible for diversion, we do not reach defendant's remaining arguments. Accordingly, we will affirm.

## I. BACKGROUND

*A.*      *The Complaint and Preliminary Hearing*

The People's February 2023 complaint alleged defendant committed felony evading of a peace officer with willful or wanton disregard for the safety of persons and property (Veh. Code, § 2800.2, subd. (a)—count one), misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)—count two), and misdemeanor possession of drug paraphernalia (Health & Saf. Code, § 11364—count three). The complaint further alleged defendant had suffered a prior strike, specifically a conviction for robbery (§§ 211, 667, subds. (b)-(i), 1170.12).

The evidence presented at the February 2023 preliminary hearing showed Deputy Travis Brewer attempted to stop defendant because of a problem with defendant's motorcycle's license plate. Defendant failed to yield, driving in excess of the speed limit on three different highways in a chase that went on for at least 10 miles and crossed into another county. Defendant had an active warrant for his arrest, and a search incident to his arrest revealed he had approximately 12 grams of methamphetamine and a glass pipe with what appeared to be methamphetamine residue.[2] There was no testimony or evidence concerning defendant's demeanor at the time of the arrest. The complaint was deemed the information, and defendant was held to answer on all counts and allegations. Defendant's attorney indicated he would seek mental health diversion.

---

[2] The parties stipulated that lab results indicated the substance recovered from defendant was methamphetamine.

*B.     Defendant's Request for Diversion*

On November 1, 2023, defendant filed a request for mental health diversion (§ 1001.36) representing that he had long suffered from bipolar disorder and was then being medicated for that disorder at the county jail.  Defendant's argument continued in pertinent part that under the amended version of section 1001.36, there was "a rebuttable *presumption* that mental illness played a significant role in crimes alleged against mentally ill defendants.  ([]§ 1001.36[, subd.] (b)(2).)"  Because defendant had a current diagnosis of bipolar disorder, he was entitled to this presumption and should be found eligible for diversion.  Moreover, he was suitable for diversion because he was willing to waive the necessary rights, participate in treatment, and was not at risk of committing a super strike offense (§ 1170.18).  Defendant's motion did not discuss whether he was experiencing a manic episode at the time of the offenses, although one argument heading summarily stated, "the symptoms that motivated [defendant's] criminal behavior would respond to mental health treatment."[3]  (Capitalization omitted.)

Defendant included a Department of Behavioral Health Services Crisis Assessment completed on October 18, 2023, in support of his diversion request.  This document reflected defendant's interview via teleconference by Kayleigh Swetland, LCSW OP, wherein defendant did not display any "apparent signs of current psychotic process."  Rather, he was "appropriate, alert, and cooperative" with "clear and coherent speech, normal rate of speed and tone and oriented x4."  Defendant's "memory appeared to be intact, insight and judgment [were] fair."  Defendant told Swetland, "they said I was evading, and I was in possession of drugs."  Swetland reported the circumstances leading

---

[3]  Defendant's supporting exhibits did include his self-report of manic episodes and related symptoms, but nothing within these exhibits stated that defendant had been experiencing those symptoms on the day of the offenses.

to the current crisis were that "[defendant] was likely experiencing mental health symptoms while committing a crime; client is now incarcerated."

Swetland summarized that defendant was 48 years old with a history of substance abuse and mental health challenges. He was homeless, unemployed, and without income prior to his incarceration. Defendant "presented with historical symptoms consistent of Bipolar disorder indicative of the client's reported manic episodes where he 'had an extremely elevated mood, I could do anything, and then when the depression came, I would stay in bed, wouldn't work.' Client also reports depressive symptoms suggestive of Bipolar: feeling sad or depressed, loss of pleasure or interest in things, feelings of hopelessness or inferiority, and feeling overly ambitious, and grandiose. Most recently client was placed in custody after evading arrest and being in possession of illicit substances. Client reports that his current medication reduces his symptomology." Finally, the assessment reflected defendant's agreement to the CORE level of care and authorized his referral to an outpatient provider for his diagnosis of bipolar disorder, unspecified.

Defendant also submitted an initial screening by the California Mental Health Services Authority, American Society of Addiction Medicine, in which defendant reported taking Buspar for bipolar and schizoaffective disorders to positive effect and that he heard voices in his head "[w]hile taking substances."

The People's informal response included a "position chart" and documents detailing defendant's arrest and criminal record. The position chart contained recommended conditions for mental health diversion, as well as a summary of the district attorney's opposition to defendant's request for mental health diversion. This summary stated: "While pending a warrant for a [§] 29800 in Napa, [defendant] came to Sacramento on a motorcycle where he led police on a 29[-]mile pursuit. [Defendant] was in possession of 14 grams of meth[amphetamine]. As noted in the Defense [mental health diversion] application, there are no charges related to [driving under the influence]

4

because [defendant] was not under the influence at the time of the evasion—nor is there any indication in the report he was suffering from [mental health] symptoms. The People object to [mental health diversion], there is no nexus. Report submitted to the court." The factual summary of the offense largely mirrored the preliminary hearing evidence, adding that the warrant for defendant's arrest was for being a felon in possession of a firearm. The included arrest reports did not contain any information suggesting defendant was suffering from a manic episode at the time of the arrest. Rather, defendant told the arresting officer that "he did not pull over because he knew he had a warrant for his arrest."

The mental health diversion hearing took place on November 30, 2023. At the outset, the trial court noted its consideration of defendant's application, as well as the People's opposition. The court then summarized: "So, I just want to make sure I kind of have the general outline. What's alleged here is that he had a warrant out of Napa. And I saw some criminal history tying him back to Napa, so I assume maybe he's kind of over that direction for a felon with a gun. And then he goes on somewhere around a 29-mile pursuit with law enforcement in Sacramento on a motorcycle, and he then is arrested. He's in possession of 14 grams of methamphetamine. And the defendant does have a prior 2800.2, albeit from 2008. I'll note, also, he has a suspended license."

Relevant to the issues on appeal, defendant's counsel then argued that defendant had struggled with bipolar disorder (including manic and depressive episodes) since high school and was experiencing a manic episode and was under the influence of drugs at the time of the crimes. Counsel continued, "[t]his state severely compromised his rational decision-making abilities during this pursuit" and "[h]is heightened paranoia and impaired judgment overshadowed his ability to comprehend the consequences of his actions." Moreover, "his prolonged insomnia due to the manic episode and drug use further aggravated his mental state which led to a misguided risk of consequence in this case." The People disagreed as stated in their written opposition.

5

The trial court then pronounced its ruling, stating: "The Court will be denying the mental health diversion application. It's not without empathy for Mr. Doyel on the issues that sounds like he's probably wrestled with for a good part of his life. I just don't think though that there is a sufficient nexus here in terms of the conduct . . . in question. That it was a function of illness as much as it was about good old-fashioned getting away from the cops because I've got narcotics on me and a suspended driver's license. Very rational decision making, quite frankly, in terms of why someone would engage in the conduct that he did. [¶] There's always, also, an additional public safety consideration that is for the Court in terms of a 29-mile pursuit, which although while he was on a motorcycle, the vehicles who are just everyday folks who are going to and from whatever part of their lives – the dangers that are presented to persons on those roadways while law enforcement is endeavoring to ultimately apprehend somebody are profound. So, for those reasons, the court is denying the application at this time." Defense counsel did not object that the trial court misapplied the law or otherwise request clarification of the court's reasoning but did discuss scheduling issues.

C.      *Defendant's Plea Deal & Sentence*

On January 8, 2024, defendant pled no contest to count one and admitted the prior strike in exchange for a stipulated sentence of two years eight months and dismissal of the remaining counts in the interests of justice. Further, the trial court granted the People's motion to amend the information by interlineation to reflect defendant's prior strike conviction for attempted robbery (§§ 664/211). Defendant was sentenced the same day in accordance with his plea. He timely appealed and received a certificate of probable cause.

## II. DISCUSSION

A.      *Section 1001.36*

"In June 2018, the Legislature enacted sections 1001.35 and 1001.36, which authorized pretrial diversion for defendants with qualifying mental health disorders.

(*People v. Frahs* (2020) 9 Cal.5th 618, 626 [].) The purpose of the statute is: (1) to increase 'diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety'; (2) to allow local discretion and flexibility for counties to develop and implement diversion for individuals with mental disorders across a continuum of care settings; and (3) to provide 'diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)" (*People v. Graham* (2024) 102 Cal.App.5th 787, 794 (*Graham*).)

Section 1001.36 has since been amended, and "[a]s presently enacted, section 1001.36, subdivision (b) provides that a defendant is eligible for pretrial diversion if two criteria are met. First, the defendant has been diagnosed with a mental disorder, . . . within the last five years by a qualified mental health expert. (§ 1001.36, subd. (b)(1).) Second, the 'defendant's mental disorder was a significant factor in the commission of the charged offense.' (§ 1001.36, subd. (b)(2).) 'If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' (*Ibid.*)" (*Graham, supra*, 102 Cal.App.5th at p. 795.) In making this determination, "A court may consider any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (§ 1001.36, subd. (b)(2).)

"If a defendant meets these eligibility requirements, the court also must find that the defendant is suitable for pretrial diversion based on satisfaction of the following criteria: '(1) In the opinion of a qualified mental health expert, the defendant's symptoms

of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] [and] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' (§ 1001.36, subd. (c)(1)-(4).)" (*Graham, supra*, 102 Cal.App.5th at p. 795.)

B.    *Standard of Review*

"A trial court's ruling on a motion for mental health diversion is reviewed for an abuse of discretion . . . . [Citations.] A trial court has 'broad discretion to determine whether a given defendant is a good candidate for mental health diversion.' [Citation.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147; accord, *Graham, supra*, 102 Cal.App.5th at p. 795.) In accordance with the guidance provided by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, we review findings made by clear and convincing evidence by asking "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Id*. at pp. 995-996; see, e.g., *People v. Ramirez* (2022) 14 Cal.5th 176, 181 [assuming without deciding that this standard should be applied to whether defendant's voluntary absence was clearly established].) Defendant maintains the burden of establishing an abuse of discretion. (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

C.    *Analysis*

Defendant challenges the trial court's denial of his request for diversion on multiple bases including that the court applied the wrong standard to both his eligibility and suitability determinations and that the factual findings supporting those

8

determinations are unsupported by substantial evidence. Because we conclude that defendant has failed to show the trial court abused its discretion in determining he was ineligible for diversion, we do not reach his remaining arguments.

Here, the trial court determined defendant was ineligible for diversion stating: "I just don't think though that there is a sufficient nexus here in terms of the conduct . . . in question. That it was a function of illness as much as it was about good old-fashioned getting away from the cops because I've got narcotics on me and a suspended driver's license. Very rational decision making, quite frankly, in terms of why someone would engage in the conduct that he did."

Defendant contends the trial court's analysis is inconsistent with section 1001.36, subdivision (b)(2) under which his diagnosis of bipolar disorder triggered a presumption that "defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." We disagree.

Defendant's diversion hearing took place in November 2023, some 11 months after the amendments giving rise to the presumption went into effect on January 1, 2023. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891.) In the absence of evidence to the contrary, we presume the trial court understood and applied the applicable law. (*People v. Thomas* (2011) 52 Cal.4th 336, 361; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) Here, nothing in section 1001.36 required the trial court to articulate express findings on the record, and the findings the trial court did make are not inconsistent with its having followed the eligibility law. The trial court explained that defendant's conduct was not a "function of his mental illness," but rather the court determined defendant had made the rational decision to try and get away from police because he was driving with a suspended license and was in possession of narcotics. This reasoning is consistent with the court having impliedly determined that defendant's

9

mental disorder was not a motivating factor, causal factor, or contributing factor to his offense. (§ 1001.36, subd. (b)(2).) Accordingly, defendant has not demonstrated the trial court misunderstood the application of section 1001.36, subdivision (b).

Moreover, defendant has not shown a lack of evidence supporting the trial court's implied determination that clear and convincing evidence established that defendant's bipolar disorder was "not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).) Even applying the heightened standard articulated in *Conservatorship of O.B.*, we find "the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B., supra*, 9 Cal.5th at pp. 995-996.)

Having reviewed the evidence available to the trial court including the preliminary hearing transcript, police reports, and defendant's submission (§ 1001.36, subd. (b)(2)), we have located no evidence suggesting defendant was in the midst of a bipolar manic episode at the time of the offenses.[4] As discussed at length above, the record does not reflect defendant telling anyone either at the time of his arrest or during the mental health diversion process that he was experiencing a manic episode when he evaded authorities. Rather, reports associated with defendant's arrest reflected that he told arresting officers that he failed to yield because he had a warrant for his arrest. Defendant also told Swetland that he had been evading and was in possession of drugs. During Swetland's interview, defendant lacked apparent signs of psychotic process, was alert with standard speech, and was "oriented x4." Nonetheless, Swetland reported that "[defendant] was

---

[4] While defendant's attorney argued at the diversion hearing that defendant was in the midst of a manic episode and had been up for days at the time of the offense, he presented no evidence to that effect. Attorney arguments are not evidence. (*People v. Barajas* (1983) 145 Cal.App.3d 804, 809.)

10

likely experiencing mental health symptoms while committing a crime." Swetland's report did not identify the basis for this opinion, although we acknowledge a later portion of the report contained generalized statements concerning defendant's self-report of historical symptoms consistent with bipolar disorder with depressive and manic periods.

Against this dearth of information implicating defendant's bipolar disorder, we find it highly likely that a fact finder evaluating defendant's rational behavior to avoid being arrested on his outstanding warrant, for driving on a suspended license, and for possession of methamphetamine and drug paraphernalia would find that defendant's bipolar disorder was neither a motivating factor, causal factor, or contributing factor to his involvement in the offenses. (§ 1001.36, subd. (b)(2); *Conservatorship of O.B., supra*, 9 Cal.5th at pp. 995-996.) Accordingly, defendant has not shown the trial court abused its discretion finding him ineligible for mental health diversion.

### III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

ROBIE, Acting P. J.

/S/

_____

FEINBERG, J.

11