Filed 10/1/25  P. v. Diop CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH WELLS,<br><br>　　　Defendant and Appellant. | A170129<br><br>(Contra Costa County<br>Super. Ct. No. 05–2005551) |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ADAMA DIOP,<br><br>　　　Defendant and Appellant. | A169710<br><br>(Contra Costa County<br>Super. Ct. No. 05–2005551) |

In these consolidated appeals, defendants Joseph Wells and Adama Diop challenge victim restitution orders made after they pled guilty to several offenses.[1]  Their sole contention is that the prosecutor prejudiced them and undermined the integrity and reliability of the restitution

---

[1] We consolidated these appeals for purposes of briefing and oral argument, if any.  We hereby consolidate them for purposes of the issuance of this single opinion resolving both appeals, given the overlap of issues and nearly identical briefing.

1

proceeding by acting as an unsworn witness at the restitution hearing in violation of the advocate-witness rule. We reject their argument and affirm.

## I.  BACKGROUND

Defendants were charged with several counts for offenses committed in late 2019. In exchange for an 18-year sentence, Diop pled guilty to four counts of home invasion robbery (Pen. Code,[2] § 213), one count of dissuading a witness by force or threat (§ 136.1, subd. (c)(1)), one count of first degree residential burglary (§ 460, subd. (a)), one count of kidnapping (§ 207, subd. (a)), and one count of assault with a semiautomatic firearm (§ 245, subd. (b)). For a 15-year sentence, Wells pled guilty to the same counts except for the assault count. Wells also admitted that he was armed with a firearm during the commission of one of the robberies. (§ 12022, subd. (a)(1).)

In July 2023, the People filed a restitution brief on behalf of some of the victims of defendants' crimes, Neil Librock, Charmain Detweiler, and Wendi and Thomas Giordano. The People requested (1) $32,696.61 for Mr. Giordano's medical bills, property losses, vehicle damage, "home security," and home repairs; (2) $15,300 for Mrs. Giordano's property losses; and (3) $143,955.63 for Librock and Detweiler's property losses and the costs of installing a security system.

The restitution hearing was held in December 2023. At the beginning of the hearing, the prosecutor submitted restitution "packages" containing signed statements from Librock, Detweiler, and the Giordanos regarding their economic losses and documentation supporting their restitution

---

[2] Undesignated statutory references are to the Penal Code.

2

requests. The prosecutor stated, "My opinion and belief that this—all those expenses are accounted for based on the documentation contained herein."

The prosecutor further noted that he had "spoken with the victims" regarding whether their homeowners insurance covered any of their losses, and, according to the prosecutor, Detweiler and Librock had already deducted the money they had received from their insurance from the amount they were requesting for restitution. Diop's counsel objected on the ground that the prosecutor was referring to hearsay information. The prosecutor continued, stating that the police department had "returned all property to victims in this restitution request as for the property that was neither located or recovered."

Defendants' attorneys then submitted the defense exhibits, one of which was a compilation from a few years earlier by Detweiler of "estimated values and lost items."[3] Diop's counsel argued that some of those estimates did not match the estimates reflected in the prosecution's documentation. The other defense exhibits purported to show the items recovered from defendants' apartment and items that were returned to Detweiler and the Giordanos. Diop's counsel claimed that "it appears that at least some of the items that were collected were returned and are still being requested by at least Mr. Giordano." He further argued that the prosecution had not established that "all of the items requested [by Detweiler] were not, in fact, returned, given the amount of jewelry that was found in the apartment."

---

[3] The exhibits submitted by the parties were returned to counsel at the end of the restitution hearing. The prosecution's exhibits were lodged with this court in September 2024, and the court clerk served the parties with a copy of the exhibits the following month. However, defendants' trial attorneys were unable to locate their copies of the defense exhibits, so those exhibits are not part of the appellate record.

When the prosecution asked for clarification as to the recovered items that were included in the restitution requests, Diop's attorney replied that "there is no way the defense could know with the evidence that was given to us what exactly lines up." Wells's attorney chimed in to note that Detweiler was the only victim who reported missing a pearl necklace, and one of the items photographed in the defense exhibits was a pearl necklace.

The prosecutor responded that Librock and Detweiler "heavily document[ed] their losses" with "[a]pporximately 50 pages worth or more, and these are from jewelers." He claimed that "the victims were asked by the police department to compile a list of their lost property" but "now we have a full documentation of it and time went by, and they were able to make appropriate estimates." "More importantly, I have spoken to these victims, and they said these are the items that were not provided back to them or recovered after the defendants' apartment was searched." The prosecutor conceded that the Giordanos requested restitution for two computers even though one of the computers was returned to them. Accordingly, he agreed to reduce the amount the Giordanos were requesting by $979. "Other than that, I don't see any other items that were returned or any other miscounting."

At this point, Diop's counsel objected again and asked the court to disregard "anything [the prosecutor] is offering as to what the victims in this case told him." Defendants' attorneys otherwise argued that the prosecution's documentation did not support some of the restitution amounts requested.

After the matter was submitted by the parties, the trial court said it was going to "review all of the documents and compare them with the exhibits" received by the court.

4

A few weeks later, the trial court issued restitution orders holding defendants jointly and severally liability for restitution in the amounts of $143,955.63 for Detweiler and Librock, $15,300 for Mrs. Giordano, and $31,421.97 for Mr. Giordano.

## II. DISCUSSION

Defendants contend the prosecutor violated the advocate-witness rule at the restitution hearing. They point to the prosecutor's explanation for Detweiler's inconsistent estimates and the comments he made that it was "his opinion and belief that . . . all expenses are accounted for" in the restitution requests, that he had "spoken with the victims" and they told him that the items returned to them were not included in their restitution requests and that their insurance did not cover all their losses, and that the police department "returned all property to victims in this restitution request as for the property that was neither located or recovered." We conclude that defendants have not shown reversible error.

"It is generally prohibited for a prosecutor to act as both an advocate and a witness." (*People v. Linton* (2013) 56 Cal.4th 1146, 1185–1186.) " 'If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.' " (*People v. Donaldson* (2001) 93 Cal.App.4th 916, 928 (*Donaldson*).)

In some cases, " '[c]ombining the roles of advocate and witness can prejudice the opposing party' and confers on the opposing party 'proper objection where the combination of roles may prejudice that party's rights in the litigation.' [Citation.] 'A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.' " (*Donaldson*, *supra*, 93 Cal.App.4th at p. 929.)

The People do not dispute that the advocate-witness rule applies to a prosecutor's unsworn statements at a restitution hearing. Rather, the People argue that the prosecutor did not violate the rule because the comments at issue reflect his analysis of the evidence presented at the restitution hearing, and thus they constitute proper attorney argument. Defendants respond that the challenged statements improperly referred to hearsay evidence.

We disagree with the People's depiction of the challenged statements. Although the advocate-witness cases cited by the parties involve an attorney's sworn testimony, case law recognizes that an attorney who "argue[s] beyond the record by stating facts not in evidence" has essentially offered unsworn testimony and has committed prosecutorial misconduct. (*People v. Nadey* (2024) 16 Cal.5th 102, 188; *People v. Fayed* (2020) 9 Cal.5th 147, 204.) Here, at least some of the statements the prosecutor made at the restitution hearing went beyond the parties' exhibits by referring to independent hearsay evidence, namely comments the victims made to the prosecutor.

Nonetheless, regardless of whether the prosecutor's actions are characterized as prosecutorial misconduct or a violation of the advocate-witness rule, the record does not reveal any prejudice to defendants.

6

Prosecutorial error is evaluated under the *Chapman* standard of prejudice when a prosecutor's behavior " ' "is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, [such that] the federal Constitution is violated." ' " (*People v. Shazier* (2014) 60 Cal.4th 109, 127.) Under that standard, "the [appellate] court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." (*People v. Vargas* (1973) 9 Cal.3d 470, 478.) But if the prosecutor's conduct does not render the trial fundamentally unfair, we will reverse "only if it is reasonably probable the trial outcome was affected." (*Shazier*, at p. 127; see *People v. Pensinger* (1991) 52 Cal.3d 1210, 1250.)

*Donaldson*, *supra*, 93 Cal.App.4th 916, relied on by defendants, is a case where the prosecutor's conduct rendered the trial fundamentally unfair. There, the key witness was the only person who had given inculpatory information to the police. (*Id.* at p. 919.) Upon being cross-examined by the defense at trial, she testified that the prosecutor had said something to her prior to the preliminary hearing which caused her to lie when she provided inculpatory testimony at the hearing. (*Id.* at p. 922.) The prosecutor then took the stand to testify about the conversation she had with the witness before the preliminary hearing. (*Id.* at pp. 923–926.) When defense counsel cross-examined her, he elicited her personal opinion about the witness's credibility, which suggested to the jury that the witness's inculpatory statements were truthful but not her trial testimony. (*Id.* at pp. 926, 931.)

The appellate court concluded that defense counsel had rendered ineffective assistance of counsel because his failure to protect his client against the prosecutor's violation of the advocate-witness rule "undermines [the court's] confidence in the integrity and reliability of the trial."

(*Donaldson*, *supra*, 93 Cal.App.4th at p. 919.)  The court reasoned that the prosecutor's challenge to the credibility of the key witness was " 'highly relevant' since [the witness's] pretrial statements were the 'heart of the prosecution's case.' " (*Id.* at p. 931.)

Here, unlike in *Donaldson*, the prosecutor made the challenged comments before a judge rather than a jury.  As *Donaldson* recognized, the advocate-witness rule addresses the risk " 'that *jurors* will be unduly influenced by the prestige and prominence of the prosecutor's office and will base their credibility determinations on improper factors.' " (*Donaldson*, *supra*, 93 Cal.App.4th at pp. 928–929, italics added; see *U.S. v. Edwards* (9th Cir. 1998) 154 F.3d 915, 921 ["the danger in having a prosecutor testify as a witness is that jurors will automatically presume the prosecutor to be credible and will not consider critically any evidence that may suggest otherwise"]; *Doe v. Yim* (2020) 55 Cal.App.5th 573, 582, 584–585 [citing this risk as a potential source of prejudice].)  There is also the risk that the factfinder will confuse the roles of advocate and witness and erroneously grant testimonial weight to the attorney's arguments.  (See *id.* at pp. 582, 584–585.)  " 'This confusion could prejudice one or more of the parties.' " (*Donaldson*, at p. 928.)

Those concerns have little weight in proceedings tried before a judge. (See *U.S. v. Morris* (7th Cir. 1983) 714 F.2d 669, 672.)  A judge is "better able to take account of a witness-prosecutor's adversarial role in weighing the objectivity of his testimony." (*U.S. v. Johnston* (7th Cir. 1982) 690 F.2d 638, 644.)  "A judge, without a jury, is presumably competent ' . . . to filter out and put in true perspective whatever impropriety, real or imagined, might otherwise [exist].' " (*People v. Superior Court (Hollenbeck)* (1978) 84 Cal.App.3d 491, 501–502, disagreed with on other grounds in *People ex rel.*

8

*Younger v. Superior Court* (1978) 86 Cal.App.3d 180, 192, fn. 9, 193.)  A judge is also "unlikely to be confused by the dual appearance as advocate and witness." (*Morris*, at p. 672.)

This is especially true in this case because no sworn testimony was presented at the restitution hearing, only attorney argument.  It is well-established that attorney argument is not evidence.[4]  (Evid. Code, § 140; *People v. Barajas* (1983) 145 Cal.App.3d 804, 809; *People v. Kiney* (2007) 151 Cal.App.4th 807, 815 ["[u]nsworn statements of counsel are not evidence"].)  As such, in cases where the prosecutor refers to facts or evidence outside the record, the remedy is usually an objection followed by an admonition to the jury to not consider the attorney's argument as evidence.  (See *People v. Fayed*, *supra*, 9 Cal.5th at p. 204; *People v. Nadey*, *supra*, 16 Cal.5th at p. 189.)  Since we are dealing with a proceeding tried by a judge, we presume the court was aware of, understood, and properly applied the relevant law. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; Evid. Code, § 664.)

Nothing in the record rebuts the presumption that the trial court knew to not consider the prosecutor's arguments as evidence.  In fact, defense counsel brought the issue to the court's attention by objecting to the prosecutor's argument twice on the ground that it improperly referred to

---

[4] Although a restitution hearing " 'does not require the formalities of other phases of a criminal prosecution' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048), a restitution order must still be supported by substantial evidence.  (*People v. Baker* (2005) 126 Cal.App.4th 463, 468–469; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 995; see *County of Alameda v. Moore* (1995) 33 Cal.App.4th 1422, 1423–1424, 1426–1427 [holding that resolution of disputed factual issues must be based on more than the unsworn statements of counsel, even in hearings that are intended to be informal], disapproved of on other grounds in *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1361 & fn. 15.)

hearsay evidence. Moreover, at the close of arguments, the court said it would review "all of the documents and compare them with the exhibits" before making its restitution orders.

Because we presume the trial court can filter out improprieties (*People v. Superior Court (Hollenbeck), supra*, 84 Cal.App.3d at pp. 501–502) and will not grant evidentiary weight to attorney argument, we conclude that any prosecutorial errors that occurred at the restitution hearing did not render the proceeding fundamentally unfair. Defendants' arguments to the contrary are conclusory.[5]

*Doe v. Yim, supra*, 55 Cal.App.5th 573, a case defendants cite in their reply, is inapposite, as it does not concern an attorney's violation of the advocate-witness rule and any resulting prejudice. Rather, the issue was whether the trial court abused its discretion in disqualifying an attorney from representing her daughter in pretrial activities in an action the daughter brought against the attorney's ex-husband. (*Id.* at pp. 576, 580.) Among the factors the trial court considered was the potential prejudice to the ex-husband if the attorney was to represent her daughter, given her relationship to the parties and the likelihood that she would testify at trial. (*Id.* at pp. 584–585.) In affirming the trial court's decision, the appellate court noted that " 'most courts recognize that an attorney who intends to testify at trial may not participate in "any pretrial activities which carry the

_____

[5] While Wells suggests that any prejudice was compounded by the lack of a probation report, he admits that he waived referral to probation. It also does not appear from the record that defendants' attorneys objected to the lack of a probation report or requested more time to review the prosecution's evidence. Thus, any due process violations stemming from the lack of a probation report were waived. (See *People v. Scott* (1994) 9 Cal.4th 331, 352–353 & fn. 15, limited on another ground by *People v. Stowell* (2003) 31 Cal.4th 1107, 1112–1113.)

risk of revealing the attorney's dual role to the jury." ' " (*Id.* at p. 583; see also *U.S. v. Johnston*, *supra*, 690 F.2d at p. 644 [noting that while the risks stemming from a testifying advocate are less in proceedings tried before a judge, the court's subsequent rulings at trial could "create the appearance . . . of favoring the cause of the party-witness"].)  No similar risk exists here.

Further, on the inadequate record before us, we cannot conclude that the restitution orders were affected by the prosecutor's comments at the restitution hearing, considering the burden-shifting framework applicable to restitution hearings.[6] (See *People v. Guerrero* (1975) 47 Cal.App.3d 441, 444 [concluding that the prosecutor's violation of the advocate-witness rule was harmless because the guilty verdicts on some of the charges gave rise to an inference that the prosecutor's testimony did not affect the verdicts].)

Under section 1202.4, a victim who seeks restitution from the defendant has the burden to make a prima facie showing of economic losses incurred as a result of the defendant's criminal acts.  (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.)  "A victim's statement of economic loss is prima facie evidence of loss." (*People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115; *People v. Keichler*, *supra*, 129 Cal.App.4th at p. 1048 ["statements

---

[6] Though neither party addressed this precise issue, the parties' briefs note the relevant facts and the burden-shifting framework in restitution hearings, and arguments concerning the effect of the challenged statements on the restitution orders are fairly included within the issue of prejudice. (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ["The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of [Gov. Code] section 68081"]; *People v. Perez* (2005) 35 Cal.4th 1219, 1228.)

by the victims . . . about the value of property stolen constitute 'prima facie' evidence of value for purposes of restitution"]; *In re S.S.* (1995) 37 Cal.App.4th 543, 548, fns. 1–2 [noting no authority requiring a victim to "supply a sworn proof of loss or detailed documentation of costs and expenses"].)  Once a prima facie showing is made, the burden shifts to the defendant to rebut the victim's statement of losses.  (*Gemelli*, at p. 1543; *People v. Fulton* (2003) 109 Cal.App.4th 876, 886.)

Here, the prosecution submitted signed statements from the victims that included itemized lists of their "[p]roperty loss" and supporting documentation, such as receipts and appraisals.  Detweiler and Librock's statement also noted that they subtracted the "Insurance Payment Received" from the restitution amount they were requesting.  The victims' statements and their supporting documentation constituted prima facie evidence of their economic losses regardless of whether the prosecutor improperly referred to other evidence at the restitution hearing.  (See *People v. Fulton, supra*, 109 Cal.App.4th at p. 887.)  The burden thus shifted to defendants to rebut the victims' statements.  (*Ibid.*)

To rebut the victims' showing, defendants submitted their own exhibits at the restitution hearing.  Defendants' exhibits do not appear in the record, but according to the transcript for the hearing, one of the exhibits was a list of property value estimates that Detweiler compiled shortly after defendants robbed her home.  As previously mentioned, defense counsel argued that some of the estimates provided by Detweiler in her statement of economic loss were inconsistent with her earlier estimates.  The defense exhibits also allegedly showed the items that were recovered from defendants' apartment and some of the items that were returned to the victims, though defense

12

counsel did not identify any returned items that were listed on the victims' statements as a property loss.

On appeal, defendants argue that the prosecutor's violation of the advocate-witness rule prejudiced them based on the "inconsistent estimates" before the trial court and the "sheer volume of items" that "made it difficult to discover whether or not the recovered items have been returned." But since defendants' exhibits do not appear in the record, we cannot confirm whether their evidence actually conflicted with the victims' statements of economic loss. If defendants did not rebut the victims' prima facie showing of economic losses, the prosecutor's comments at the restitution hearing would not have affected the outcome of the hearing. Even if we assume that some of Detweiler's earlier estimates were different from her more recent estimates, it is possible that the defense exhibits showed that the original estimates were made without the benefit of documentation, which was the gist of the prosecutor's argument at the restitution hearing. "[T]he prosecution 'enjoys wide latitude in commenting on the evidence, including the reasonable inferences and deductions that can be drawn therefrom.' " (*People v. Fayed*, *supra*, 9 Cal.5th at p. 204.)

Absent a contrary showing in the record, we make " 'all presumptions in favor of the trial court's action.' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) " ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Ibid.*) It is the appellant's burden to provide an adequate record, and failure to do so as to a given issue " 'requires that the issue be resolved against [the appellant].' " (*Ibid.*)

Applying these principles here, we presume that the defense exhibits submitted at the restitution hearing indicated that Detweiler's earlier

estimates were merely preliminary and that the exhibits otherwise did not conflict with the victims' statements of economic loss.  In light of this presumption, defendants have not demonstrated that any prosecutorial errors in this case affected the outcome of the restitution proceeding.

## III.   DISPOSITION

The restitution orders are affirmed.

_____
Langhorne Wilson, J.

WE CONCUR:


_____
Humes, P. J.


_____
Smiley, J.



A170129; A169710